

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2003

# Brayman Constr Corp v. Home Ins Co

Precedential or Non-Precedential: Precedential

Docket 02-1316

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Brayman Constr Corp v. Home Ins Co" (2003). *2003 Decisions.* Paper 781.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/781

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

          Filed February 12, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1316

BRAYMAN CONSTRUCTION CORPORATION

v.

HOME INSURANCE COMPANY; ZURICH NORTH AMERICA
INSURANCE COMPANY,
          Appellants

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 01-cv-00762)
District Judge: Honorable William L. Standish

Argued November 20, 2002

Before: BARRY and AMBRO, Circuit Judges,
ACKERMAN*, District Judge

(Filed: February 12, 2003)

_____

  *The Honorable Harold A. Ackerman, United States District Judge for
the District of New Jersey, sitting by designation.


          Emilie L. Bakal, Esquire (Argued)
          Daniel J. Endick, Esquire
          Mound, Cotton, Wollan &
           Greengrass
          One Battery Park Plaza, 9th Floor
          New York, NY 10004

          Dennis J. Roman, Esq.
          Grogan Graffam, P.C.
          Four Gateway Center, 12th floor
          Pittsburgh, PA 15222

           Attorneys for Appellant

          Christopher C. French, Esquire
           (Argued)
          Nicholas P. Vari, Esquire
          Heath B. Monesmith, Esquire
          Kirkpatrick & Lockhart
          535 Smithfield Street
          Henry W. Oliver Building
          Pittsburgh, PA 15222

           Attorneys for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

This case requires us to decide whether a dispute between an insurance company and its insured must be arbitrated. In light of the strong federal policy favoring arbitration, we hold that the dispute is arbitrable and therefore reverse the District Court's decision.

I. Background

Plaintiff Brayman Construction Corp. ("Brayman") purchased a workers' compensation insurance policy (the "Policy"), effective January 1, 1995, from The Home Insurance Co. ("Home"). The parties subsequently entered into a separate retrospective premium agreement (the "RPA"), which required Brayman to pay Home an additional

2

premium on the Policy whenever a covered claim led to a judgment or settlement. While the underlying Policy was silent as to arbitration, the RPA contained an arbitration clause, which read, in relevant part:

> If any dispute shall arise between the Company and Insured with reference to the interpretation of this Agreement, or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen . . .. The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties.

The RPA also contained a provision that "[n]othing in this Agreement shall modify, alter, or amend any of the terms or conditions of the Policies relating to the insurance afforded thereunder."

This dispute arose because of a workers' compensation claim submitted by a former Brayman employee. Brayman believed that the claim was meritless. It alleges that it so informed Home, but that Home and its defense counsel never investigated whether the employee's alleged injuries existed before her employment with Brayman. As a result, Home improperly paid her compensation benefits.

Dissatisfied with this outcome, Brayman eventually persuaded Home to retain new defense counsel, who hired independent experts to assess the employee's claim and confirmed Brayman's suspicion that she had received treatment for her alleged injury before Brayman hired her. A workers' compensation judge then allowed Brayman to terminate her benefits.

Home assessed Brayman $195,100 under the RPA to
account for the previous payment of the employee's claim.
When Brayman refused to pay Home the retrospective
premium, Home demanded arbitration in accordance with
the RPA. In response to Home's demand to arbitrate,
Brayman brought three claims before the District Court: (1)
compensatory and punitive damages for Home's bad faith,

for which 42 Pa. Cons. Stat. S 83711  provides a cause of
action; (2) punitive and compensatory damages for Home's
alleged breach of its contractual obligation under the Policy
to provide Brayman with a competent defense to the
employee's claim and of Home's contractually implied duty
of good faith; and (3) a declaratory judgment that Brayman
has no obligation to pay Home $195,110. Brayman alleges
that it has sustained approximately $270,000 in injuries
due to Home's mishandling of the employee's claim. 2 Along
with its complaint, Brayman filed a motion to stay the
arbitration. Home opposed Brayman's motion to stay
arbitration and filed a cross-motion to compel arbitration
and to dismiss or, in the alternative, to stay proceedings.

A magistrate judge issued a Report and Recommendation
concluding that Brayman's motion to stay arbitration
should be granted. The District Court issued an order
adopting the magistrate judge's recommendation. Home
appeals.

II. Jurisdiction and Standard of Review

Home is a New York corporation, Brayman is a
Pennsylvania corporation, and Brayman seeks damages in
excess of $75,000. The District Court therefore properly
exercised diversity jurisdiction under 28 U.S.C.S 1332. Our
Court has appellate jurisdiction under 9 U.S.C.S 16(a),
which allows an appeal to be taken from, inter alia, a
district court's denial of a petition to compel arbitration.

---

1. That statute provides:

> In an action arising under an insurance policy, if the court finds
> that the insurer has acted in bad faith toward the insured, the court
> may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the
> claim was made by the insured in an amount equal to the prime
> rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

2. Given the procedural posture of this case, it remains unclear what
comprises this sum.

Whether the dispute between Brayman and Home is arbitrable turns on questions of contract construction and statutory interpretation, both questions of law over which we exercise plenary review. See Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993) (contract construction); Moody v. Sec. Pac. Bus. Credit, Inc., 971 F.2d 1056, 1063 (3d Cir. 1992) (statutory interpretation); see also Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3d Cir. 1992) (exercising plenary review over a district court's denial of a motion to stay an action and compel arbitration).

III. Discussion

A. The RPA's arbitration provision makes this dispute arbitrable

The Federal Arbitration Act, 9 U.S.C. S 1, et seq. (the "FAA"), mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 24-25 (1983); see also Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("[A]n agreement to arbitrate a particular dispute 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' ") (quoting AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986)). Moreover, the "presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is .. . broad." AT&T Techs., 475 U.S. at 650.

Here, the RPA's arbitrability provision is broad in scope, sweeping into its reach "any dispute . . . between the Company and Insured with reference to the interpretation of [the RPA], or their rights with respect to any transaction involved." See Ace Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 30 (2d Cir. 2002) (noting that the identical clause has a "broad scope") (quoting Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp. , 246 F.3d 219, 224 (2d Cir. 2001)); Houston Gen. Ins. Co. v. Realex Group N.V., 776 F.2d 514, 516-17 (5th Cir. 1985)

(compelling arbitration because the language "any dispute . . . with reference to . . . [the parties'] rights with respect to any transaction involved" is as broad as the language "any dispute . . . as to the rights or liabilities incident to this Agreement"). The language "any transaction involved" in the arbitration provision in our case is ambiguous. However, in light of the federal policy mandating that we interpret ambiguous contractual language in favor of arbitration, we read "any transaction involved" to mean any business dealing relating, in whole or in part, to the RPA.

Because all of Brayman's claims present a dispute under the RPA or concern a "transaction involved" with the RPA dispute -- Home's alleged mishandling of the workers' compensation claim -- the entire dispute is covered by the RPA's arbitration provision.

Brayman argues, however, that this dispute concerns whether Home acted in good faith as required by the Policy, rather than whether Brayman owes Home a premium under the RPA. It cites Tippins, Inc. v. The Home Indemnity Co., Civil Action No. 97-1564 (W.D. Pa. Mar. 16, 1998) (slip op.), which addressed a situation virtually indistinguishable from that presented here (as well as the same defendant, Home). Tippins, like Brayman, argued that its dispute concerned the insurer's good faith, not whether it owed an additional premium. The Tippins Court agreed, saying that "[t]he relevant issue . . . is whether Home breached a duty of good faith and fair dealing . . . . Whether Tippins may [or] may not owe a premium payment to Home at the end of the day is incidental." Id. at 7. The District Court in this case found Tippins controlling.

Home cites district court caselaw from other circuits that takes the opposite view. Svedala Industries, Inc. v. The Home Insurance Co., 921 F. Supp. 576 (E.D. Wis. 1995), also involved a bad-faith claim and premium agreement language essentially identical to that here and in Tippins. In Svedala, which applied Wisconsin law, the Court held that the bad-faith claim was subject to arbitration because the "transaction involved" language in the premium agreement was sufficiently broad to bring the claim within the premium agreement's arbitrability provision. Id. at 579-80. In re Home Insurance Co., 908 F. Supp. 180 (S.D.N.Y.

6

1995), involved the same parties and facts as Svedala and reached the same result.

While Tippins is both plausible and well-reasoned, we forego following its path and instead concur more with the Svedala Court's reasoning. In light of the breadth of the arbitration provision at issue here, as well as the federal policy counseling that doubts be construed in favor of arbitration, the District Court should have held this dispute arbitrable.

That the RPA says "[n]othing in this Agreement shall modify, alter, or amend any of the terms and conditions of the Policies relating to the insurance afforded thereunder" does not alter our conclusion. We read this provision, by virtue of the language "relating to the insurance afforded thereunder," to declare only that the RPA does not modify the insurance coverage afforded by the Policy. The RPA, by its own terms, modifies other aspects of the relationship between Brayman and Home. For example, it requires Brayman to pay a retrospective premium where the Policy itself does not so prescribe.

We also reject the notion that this dispute is not subject to mandatory arbitration because Brayman's breach-of-contract and bad-faith claims "arise under" the Policy rather than the RPA. See Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 530 (3d Cir. 1997) (holding that bad-faith claims under S 8371 "arise under" insurance policies). Polselli does not necessarily preclude the conclusion that Brayman's claims also relate sufficiently to the RPA that they are swept into the RPA's broad arbitration clause. "If the allegations underlying the claims 'touch matters' covered by [an arbitration clause in a contract], then those claims must be arbitrated, whatever the legal labels attached to them." Genesco, Inc. v. T. Kakiuchi & Co., Inc., 815 F.2d 840, 846 (2d Cir. 1987) (holding civil RICO and Robinson-Patman Act claims subject to arbitration based on an arbitration provision in sales-confirmation forms).

Finally, we note that there is no language in the Policy that is incompatible with this cause of action being resolved in an arbitral forum. The Policy does not provide that it is

7

to be enforced in court or specify a choice of forum. Compare ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc., 133 F.3d 664, 670 (8th Cir. 1998) (noting that the agreement at issue provided that "Amerishare consents to the personal jurisdiction of the Minnesota courts with respect to the loan documents").

B. Brayman's S 8371 bad-faith claim is arbitrable

Brayman also asserts a claim under 42 Pa. Cons. Stat. S 8371, which provides a cause of action against insurers who act in bad faith. As discussed above, Brayman'sS 8371 claim falls within the RPA's arbitration provision because the claim concerns its "rights with respect to" the RPA dispute at issue. Brayman argues that its S 8371 bad-faith claim is not arbitrable, however, because S 8371 claims may be entertained only by a judge as a matter of Pennsylvania law. See Nealy v. State Farm Mut. Auto Ins., 695 A.2d 790, 793-94 (Pa. Super. 1997) ("[W]e conclude that original jurisdiction to decide issues of S 8371 bad faith is vested in our trial courts . . . . [T]he arbitration panel did not have jurisdiction to decide the S 8371 bad faith claim . . . .").

But Nealy directly conflicts with, and therefore is preempted by, the FAA.3 The FAA prevents state law from undermining parties' contracts to arbitrate. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 58-59, 63-64 (1995) (upholding arbitration of a punitive damages claim under a contractual arbitration provision, notwithstanding New York state law allowing only courts -- but not arbitrators -- to award punitive damages); Southland Corp. v. Keating, 465 U.S. 1, 16 (1984) ("Congress[through the FAA] intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements."); cf.

Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287 (3d Cir. 2001) (holding that a choice-of-law clause, without more, did not evidence contractual intent to opt into Pennsylvania law governing arbitration standards). 4

_____

3. Nealy considered only whether a S 8371 claim was arbitrable under the Pennsylvania Arbitration Act, not the FAA. Nealy, 695 A.2d at 791.

4. We also note that it is unclear whether Brayman may bring an S 8371 claim on the facts of this case. See Berks Mut. Leasing Corp. v. Travelers

IV. Conclusion

In this context, we hold that the dispute between Brayman and Home is arbitrable. We therefore reverse the decision of the District Court and remand for proceedings consistent with this opinion.

A True Copy:
Teste:

     Clerk of the United States Court of Appeals
     for the Third Circuit

_____

Prop. Cas., No. 01-CV-6784, 2002 WL 31761419, at *5. (E.D. Pa. Dec. 9, 2002) ("Section 8371 . . . does not apply to conduct unrelated to the denial of a claim."). The viability of Brayman'sS 8371 cause of action is not before us, however.