

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-2006

# US Small Bus Admn v. Chimicles

Precedential or Non-Precedential: Precedential

Docket No. 04-4083

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"US Small Bus Admn v. Chimicles" (2006). *2006 Decisions*. Paper 1005.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1005

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4083

———

THE U.S. SMALL BUSINESS ADMINISTRATION,
as Receiver for Acorn Technology Fund, L.P.

v.

PETER E. CHIMICLES,

Appellant

(D.C. Civil No. 03-cv-05987)

———

No. 05-1330

———

THE U.S. SMALL BUSINESS ADMINISTRATION,
as Receiver for Acorn Technology Fund, L.P.

v.

LEONARD BARRACK;
LYNNE BARRACK,

Appellants

(D.C. Civil No. 03-cv-05992)

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge:  Hon. James T. Giles

———

1

Argued April 18, 2006

Before: SLOVITER, AMBRO and MICHEL[*], <u>Circuit Judges</u>

(Filed: May 10, 2006)

———

Michael D. Gottsch (Argued)
M. Katherine Meermans
Chimicles & Tikellis LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041

  *Counsel for Appellant Peter E. Chimicles*

Eric Kraeutler
G. Jeffrey Boujoukos (Argued)
Catharine E. Gillespie
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

  *Counsel for Appellants Leonard and Lynne Barrack*

Patrick L. Meehan
United States Attorney
Virginia A. Gibson
Assistant United States Attorney
Paul G. Shapiro (Argued)
Assistant United States Attorney
Office of the United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

---

  [*] Hon. Paul R. Michel, Chief Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Patrick K. McCoyd, Esq.
Tracey r. Seraydarian, Esq.
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 13th Floor
Philadelphia, PA 19103

Thomas W. Rigby, Esq.
Small Business Administration
Office of General Counsel/Litigation
409 3rd Street, SW
7th Floor
Washington, DC 20416

   *Counsel for Appellee United States Small Business Administration*

---

OPINION OF THE COURT

---

MICHEL, <u>Circuit Judge</u>.

   In these consolidated cases, Peter E. Chimicles appeals from an order of the United States District Court for the Eastern District of Pennsylvania, denying his motion to stay proceedings pending mandatory arbitration; Leonard and Lynn Barrack appeal a similar order. Because we agree that these contractual disputes, each concerning an agreement without an arbitration provision, were not subject to an arbitration provision contained in a separate (but related) agreement, we affirm the district court's orders in both cases.

## I. Background

   This appeal concerns only two of the myriad of cases that revolve around Acorn Technology Fund, LP ("Acorn"), a New Jersey limited partnership founded in 1997. Acorn's general partner was Acorn Technology Partners, LLC, a New Jersey limited liability corporation run by John B. Torkelsen.

Appellants Chimicles and the Barracks were private limited partners in this venture. They both executed (1) a partnership agreement with Torkelsen acting on behalf of the general partner and (2) a subscription agreement with Acorn. In the latter, each agreed to make capital contributions to the partnership in exchange for a limited partnership interest.

Acorn was licensed by the United States Small Business Administration ("SBA") as a Small Business Investment Company ("SBIC") pursuant to the Small Business Investment Act of 1958 ("SBIA"), 15 U.S.C. §§ 661-697g. Once licensed, an SBIC can receive as much as $2 in federal matching funds for each private dollar it invests in qualified small businesses. 15 U.S.C. § 683. It must, however, conduct its activities according to the SBIA and its accompanying regulations. 13 C.F.R. § 107.500.

On January 7, 2003, the United States filed an action against Acorn, alleging various violations of the SBIA and seeking appointment of a receiver. On January 17, 2003, the SBA was appointed as receiver and, as such, was authorized to defend and pursue all "claims and causes of action available to Acorn, as warranted." The district court also stayed all civil litigation "involving Acorn, the Receiver, or any of Acorn's past or present officers, directors, managers, agents or general or limited partners," unless specifically permitted by the court. Order for Operating Receivership, United States v. Acorn Technology Fund, L.P., No. 03-cv-0070 (E.D. Pa. Jan. 17, 2003). The instant cases, which were allowed to proceed despite the stay, involve the SBA's attempts to marshal Acorn's assets by making demands upon the limited partners for outstanding amounts owed on their investor subscription agreements.

### A.    Chimicles

Pursuant to an earlier agreement not relevant to this dispute, Chimicles subscribed to a $250,000 commitment as a private limited partner. On September 15, 2000, he agreed to an additional $65,000, bringing his total commitment to $315,000. It is undisputed that Chimicles fulfilled his $250,000 obligation but did not pay the additional $65,000, although he asserts that Torkelsen released him from this latter commitment.

By letter dated June 12, 2003, the SBA made a written demand upon Chimicles for the unpaid balance. When he refused to honor his subscription commitment, the SBA filed a complaint against him, alleging breach of his subscription agreement with Acorn. On January16, 2004, Chimicles filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, to stay the case pending mandatory arbitration. On September 21, 2004, the motion was denied in its entirety. A timely appeal followed.[1]

## B.    The Barracks

On April 7, 1998, the Barracks executed a subscription agreement for a $1 million limited partnership interest in Acorn. They agreed to make an initial payment of $250,000 and three further payments of $250,000 over the next three years. On September 15, 2000, the Barracks agreed to two additional payments of $250,000. The Barracks have paid only $750,000 of their $1.5 million commitment, but they assert that Torkelsen encouraged them to invest by waiving in advance any penalties for failing to fulfill their subscription agreements.

By letter dated June 5, 2003, the SBA made a written demand upon the Barracks for the remaining $750,000. When they refused, the SBA sued the Barracks, alleging a breach of their subscription agreement. On September 22, 2004, the Barracks filed a motion to dismiss, or, in the alternative, to stay the case pending mandatory arbitration. Their motion was denied on January 5, 2005. Like Chimicles, the Barracks appealed.

*        *        *

These appeals were consolidated by order dated February 7, 2005.

## II. Jurisdiction and Standard of Review

---

[1]  Chimicles does not appeal the portion of the district court's order denying his motion to dismiss for lack of personal jurisdiction.

We have subject matter jurisdiction pursuant to 9 U.S.C. § 16(a). We exercise plenary review over legal questions concerning the applicability and scope of an arbitration agreement. CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 137 n.10 (3d Cir. 2004); Harris v. Green Tree Fin. Corp., 183 F.3d 173, 176 (3d Cir. 1999). Despite the liberal policy in favor of enforcing arbitration agreements under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., a party cannot be forced to arbitrate unless "that party has entered into a written agreement to arbitrate that covers the dispute." Bel Ray Co., Inc. v. Chemrite Ltd., 181 F.3d 435, 440 (3d Cir. 1999); 9 U.S.C. § 2.

## III. Discussion

The limited question before us is whether SBA's attempts to enforce the subscription agreements are subject to mandatory arbitration. Appellants make similar arguments. Essentially, both concede that the subscription agreements do not themselves provide for mandatory arbitration, but argue that the partnership agreements contain a valid (and broad) arbitration provision which applies to these disputes because the two agreements are sufficiently related. Specifically, section 1.1 of the subscription agreement requires that investors agree to make capital contributions "in accordance with the terms and conditions described herein and in the Partnership Agreement, and to be bound by all of the terms and conditions of the Partnership Agreement."

If arbitration is required here, it must be imported from section 13.10 of the partnership agreement. This provision states:

> The General Partner and the Private Limited Partners, their successors, assigns, and/or their officers, directors, attorneys, shareholders, members or agents hereby agree that any and all controversies, claims or disputes arising out of or relating to this Agreement, the breach thereof, or the operation of the Partnership shall be settled by arbitration in Princeton, New Jersey, in accordance with the then prevailing commercial

6

arbitration rules of the American Arbitration Association. The Parties agree to abide by all decisions and awards rendered by the arbitrator, and such decisions and awards shall be final and conclusive and may be entered in any court having jurisdiction thereof as a basis of judgment.

The choice of venue clause in section 13.7 further provides that an "Action to enforce any provision of this Agreement or any action brought by the Partners against the General Partner or the Partnership shall be brought through arbitration in New Jersey, pursuant to Section 13.10 of this Agreement."

These arbitration provisions are noteworthy in two respects. First, the agreement to arbitrate was made between the general partner and the private limited partners — i.e., the signatories to the partnership agreement. Second, section 13.7 emphasizes that the arbitration clause was intended to apply to (1) actions to enforce provisions of the partnership agreement and (2) actions brought by the private limited partners.

Acorn, however, was not a private limited partner, nor is the SBA as receiver acting as a private limited partner. Even assuming arguendo that section 1.1 of the subscription agreement incorporates by reference the terms and conditions of the partnership agreement, the arbitration provision does not apply to an action brought by Acorn (or SBA as receiver). Indeed, section 1.1 merely required the <u>investors</u> to agree "to be bound by all of the terms and conditions of the Partnership Agreement."

Regardless, the district court correctly found that the subscription agreements and the partnership agreements are separate, fully-integrated contracts. Section 3.5 of the subscription agreements provides that "[t]his instrument contains the entire agreement of the parties, and there are no representations, covenants or other agreements except as stated or referred to herein." Likewise, section 13.6 of the partnership agreements provides that "[t]his Agreement constitutes the complete and exclusive statement of the agreement between the Partners."

7

To support their argument for importing an arbitration clause from a related agreement, appellants rely heavily upon Brayman Construction Corporation v. Home Insurance Company, 319 F.3d 622 (3d Cir. 2003). This case is distinguishable. In Brayman, a workers' compensation insurance policy was later supplemented by a retrospective premium agreement containing an arbitration clause that applied to any dispute that arose "between the Company and Insured." Id. at 623. Both contracts were signed by the same two parties. Neither attempted to enforce the arbitration provision against a third party.

Likewise, the decisions cited by appellants from other circuits enforced the arbitration clause against a party that had signed the agreement. See Nat'l Am. Ins. Co. v. Score Reinsurance Co., 362 F.3d 1288, 1289 (10th Cir. 2004); Pers. Sec. & Safety Sys. Inc. v. Motorola, Inc., 297 F.3d 388, 392 (5th Cir. 2002). In other words, the issue in those cases was the scope of arbitrable subject matter covered by the agreement, not whether both parties had agreed to arbitrate.

Finally, we note that even if we were to assume that disputes arising under the subscription agreement were otherwise subject to mandatory arbitration, appellants were unable to explain at oral argument why section 5.1.2 of the partnership agreement does not negate any obligation to arbitrate. Nor did Chimicles' post-argument memorandum provide a satisfactory response. Section 5.1.2 provides as follows:

> Notwithstanding any provision in the Agreement to the contrary (except as expressly provided in this Section 5.1.2), in the event that the Partnership is subject to restricted operations (as such term is used in the SBIC Act)[2] and prior to the liquidation of the Partnership the

---

[2] The term "Restricted Operation Conditions" is defined at 13 C.F.R. § 107.1820(e) and applies when, *inter alia*, the "SBA determines that you have failed to comply with one or more of the substantive provisions of the Act." 13 C.F.R. § 107.1820(e)(7). The occurrence of one of the enumerated "Restricted Operation

SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions shall not be subject to any conditions set forth in the Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (a) within any specified time period or (b) prior to any specified date.

Now that the SBA has been appointed as receiver and is attempting to marshal Acorn's assets, appellants' obligations to make contributions are no longer "subject to any conditions set forth in the Agreement," which we hold includes the arbitration provision set forth in section 13.10. Thus, even if imported into the subscription agreements, the arbitration provision of the partnership agreements would not apply to these disputes over unpaid investor commitments.

## IV. Conclusion

For the aforementioned reasons, we affirm the district court's rulings that these disputes were not subject to mandatory arbitration.

_____

---

Conditions" authorizes the SBA to avail itself of any of the remedies listed at 13 C.F.R. § 107.1820(f).