J-A31023-16

2017 PA Super 206

| LESLIE SALTZMAN, D.O. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| THOMAS JEFFERSON UNIVERSITY HOSPITALS, INC. AND JEFFERSON MEDICAL CARE | |
| Appellants | No. 2593 EDA 2015 |

Appeal from the Order Dated July 17, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): May Term, 2015, No. 00737

BEFORE:  BENDER, P.J.E., MOULTON, J., and FITZGERALD, J.[*]

OPINION BY MOULTON, J.:                    **FILED JUNE 30, 2017**

Thomas Jefferson University Hospitals, Inc. and Jefferson Medical Care (together, "Jefferson") appeal from the July 17, 2015 order entered in the Philadelphia County Court of Common Pleas overruling Jefferson's preliminary objections to the complaint of Leslie Saltzman, D.O. and ordering Jefferson to file an answer within 20 days.[1]  We reverse and remand.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Generally, "an order [overruling] a party's preliminary objections is interlocutory and, thus, not appealable as of right."  ***Callan v. Oxford Land Dev., Inc.***, 858 A.2d 1229, 1232 (Pa.Super. 2004).  However, an exception to this rule exists when a party appeals from an order denying a petition to compel arbitration.  ***Id.***; ***see*** Pa.R.A.P. 311(a)(8); 42 Pa.C.S. § 7320(a).
*(Footnote Continued Next Page)*

J-A31023-16

The trial court set forth the following facts:

> [Saltzman] began working for Jefferson in August 2014 at the Myrna Brind Center for Integrative Medicine. A few days prior to her start date, [Saltzman] signed an employment contract with Defendant, Jefferson Medical Care [("JMC")]. This employment contract contains a portion that the parties refer to as the Physician Service Agreement [("Agreement")], and it contains an arbitration clause that reads as follows:
>
> > Dispute Resolution. In the event of any controversy or claim between the parties hereto arising under or related to this Agreement or an[y] breach thereof, the parties shall confer in good faith in an attempt to resolve the dispute informally. If the controversy is not satisfactorily resolved at this level, then the grieving party shall inform the other party in writing of its intention to pursue arbitration, such notice stating the substance of the controversy. If the matter is not resolved within thirty (30) days after such notice, then the controversy shall be settled by binding arbitration in Philadelphia, Pennsylvania in accordance with the American Health Lawyers Association Alternative Dispute Resolution Services Rules of Procedure for Arbitration then in effect.
>
> The Defendant, Thomas Jefferson University Hospital[s], Inc. [("TJUH")], was not a party to the Physician Service Agreement, and no representative signed the Agreement on behalf of [TJUH].
>
> [Saltzman] avers that while she was working at Myrna Brind Center for Integrative Medicine, she learned that [Jefferson was] engaging in wrongdoing. Specifically, [Saltzman] avers that [Jefferson] . . . w[as] holding forth a chiropractor, George Zabrecky, as a licensed doctor of medicine, when he did not hold such credentials. She

*(Footnote Continued)* _____

Therefore, the trial court's order overruling Jefferson's preliminary objections seeking to compel arbitration, though interlocutory, is appealable as of right.

- 2 -

avers that [Jefferson] delegated medical responsibilities to Mr. Zabrecky despite [its] knowledge that he was not qualified, trained, experienced, licensed or certified to perform these duties. [Saltzman] avers that she reported this wrongdoing on or about October 15, 2014, October 24, 2014, and October 28, 2014. [Saltzman's] employment was terminated on November 11, 2014.

Opinion, 7/11/16, at 1-2 ("1925(a) Op.").

On May 8, 2015, Saltzman filed a complaint against Jefferson, alleging claims for retaliation in violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421-28, and common law wrongful termination. Jefferson filed preliminary objections, seeking to compel arbitration pursuant to the Agreement. On July 17, 2015, the trial court overruled the preliminary objections and ordered Jefferson to file an answer within 20 days.

In its opinion, the trial court offered three reasons for denying Jefferson's preliminary objections. First, the trial court stated that "[t]he fact that [TJUH] was not a party to the Physician Service Agreement was a critical factor" in its decision not to compel arbitration. 1925(a) Op. at 3-4. The court explained that because TJUH "was not a party to the . . . Agreement, [Saltzman] could not knowingly waive her right to sue [TJUH] in a court of law when she" signed the Agreement. *Id.* at 3.[2] Second, the trial

_____

[2] Jefferson argues that the trial court erroneously concluded that the arbitration provision is unenforceable as to TJUH because TJUH is not a party to the Agreement. We agree. This Court has held that a non-signatory to an arbitration agreement can enforce the agreement if there is an "obvious and close nexus" between the non-signatory and either the contract itself or the contracting parties. *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1097 (Pa.Super. 2015) (quoting *Dodds v. Pulte Home Corp.*, 909

*(Footnote Continued Next Page)*

- 3 -

court found that the "Agreement was an unconscionable contract of adhesion" that unreasonably favored Jefferson. *Id.* at 4. In making this determination, the court asserted that Jefferson failed to establish that Saltzman read and understood the consequences of the arbitration provision before signing the Agreement. *Id.* Third, the trial court concluded that "[c]ompelling arbitration in this matter would be fundamentally incompatible with the remedial and deterrent functions of the" Whistleblower Law, finding that "[t]he citizens of the Commonwealth of Pennsylvania, and the public at large, have an interest in the public resolution of" Saltzman's claims. *Id.* at 5. Jefferson timely appealed to this Court.

Jefferson raises the following issues on appeal:

1. Did the Trial Court abuse its discretion and/or err as a matter of law when it failed to consider, let alone apply, the liberal policy favoring arbitration agreements under the Federal Arbitration Act ("FAA") and Pennsylvania law and overruled Jefferson's preliminary objections seeking to compel arbitration, when there exists a valid enforceable agreement to arbitrate that both JMC and TJUH may enforce against Saltzman and when the claims asserted by Saltzman against Jefferson fall within the scope of the Arbitration Provision because the claims constitute "any controversy or claim between the parties to the [Agreement]" and "aris[e] under or relat[e] to [the Agreement] or any breach thereof"?

*(Footnote Continued)* ─────────

A.2d 348, 351 (Pa.Super. 2006)). In her brief, Saltzman concedes that TJUH has an obvious and close nexus to JMC and would be bound by the arbitration provision were it deemed valid and enforceable. Saltzman's Br. at 8 n.2. Thus, our disposition applies equally to both TJUH and JMC.

- 4 -

2. Did the Trial Court abuse its discretion or err as a matter of law in overruling Jefferson's preliminary objections based on the finding that the Arbitration Provision was an unenforceable unconscionable contract of adhesion, especially when the Trial Court:

   a. did not determine both that: (i) one of the parties lacked a meaningful choice before accepting the terms of the provision (procedural unconscionability); and (ii) the provision unreasonably favors Jefferson (substantive unconscionability);

   b. improperly placed the burden on Jefferson to present evidence disproving procedural unconscionability when Saltzman did not initially present such evidence, and, in the purported absence of such evidence from Jefferson, found the Arbitration Provision unconscionable and unenforceable; and

   c. the evidence Jefferson presented (some of which the Trial Court erred in not considering) showed that the Arbitration Provision was not procedurally and/or substantively unconscionable?

3. Did the Trial Court abuse its discretion when it overruled the preliminary objections on the basis of public policy and/or the "nature of the claims," when:

   a. There is no basis in the Whistleblower Law to do so (i.e., the Arbitration Provision is not in derogation of any right Saltzman has been provided by statute and there is no inherent conflict between arbitration and the Whistleblower Law's underlying purpose);

   b. The public policy on which the Trial Court relied – the right of the public to be privy to the litigation of Saltzman's claims – is not sufficiently well-defined and dominant, as the law requires, to justify rendering the Arbitration Provision unenforceable based on public policy;

c. In so doing, the Trial Court created an outright prohibition on arbitrating whistleblower claims, which is preempted by the FAA; and

d. The strong liberal policy favoring arbitration agreements clearly outweighs any purported public policy upon which the Trial Court relied.

4. Did the Trial Court abuse its discretion in finding that the [Agreement] was an "employment contract," and that Saltzman was "employed" by Jefferson?

Jefferson's Br. at 3-5 (trial court answers omitted).

Our review of an order overruling preliminary objections seeking to compel arbitration "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Callan v. Oxford Land Dev., Inc.*, 858 A.2d 1229, 1233 (Pa.Super. 2004). In making this determination, we consider the following principles:

(1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.

*Id.* (quoting *Highmark Inc. v. Hospital Serv. Ass'n of Northeastern Pa.*, 785 A.2d 93, 98 (Pa.Super. 2001)). Whether a dispute is within the scope of an arbitration agreement is a question of law for which our scope of review is plenary. *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1095 (Pa.Super. 2015).

Pennsylvania courts apply the liberal policy favoring arbitration agreements embodied in the FAA. *See id.* As our Supreme Court recently emphasized, courts are "obligat[ed] to consider questions of arbitrability with a 'healthy regard for the federal policy favoring arbitration.'" *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 509 (Pa. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)), *cert. denied*, 137 S.Ct. 1375 (2017). "[T]he FAA binds state courts to compel arbitration of claims subject to an arbitration agreement." *Id.* (citing 9 U.S.C. § 2).[3] "This directive is mandatory, requiring parties to proceed to arbitration on issues subject to a valid arbitration agreement, even if a state law would otherwise exclude it from arbitration." *Id.* "The only exception to a state's obligation to enforce an arbitration agreement is provided by the savings clause, which permits the application of generally applicable state contract law defenses such as fraud, duress, or

_____

[3] Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Pennsylvania's Uniform Arbitration Act contains almost identical language. *See* 42 Pa.C.S. § 7303.

unconscionability, to determine whether a valid contract exists." ***Id.***; ***see also Kindred Nursing Ctrs. Ltd. P'ship v. Clark***, 137 S.Ct. 1421, 1426 (2017) (stating that court may invalidate arbitration agreement only "based on 'generally applicable contract defenses' like fraud or unconscionability").

When a party to an arbitration agreement seeks to compel arbitration, our inquiry is the same whether the agreement is governed by federal or Pennsylvania law. ***Provenzano***, 121 A.3d at 1096. We must determine: (1) whether a valid agreement to arbitrate exists; and (2) whether the dispute falls within the scope of the arbitration agreement. ***Highmark***, 785 A.2d at 98; ***see Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 654-55 (Pa.Super. 2013). If these two requirements are satisfied, the dispute must be submitted to arbitration. ***Messa v. State Farm Ins. Co.***, 641 A.2d 1167, 1168 (Pa.Super. 1994).

### I. Whether a Valid and Enforceable Arbitration Agreement Exists Between Saltzman and Jefferson

As noted above, the trial court concluded that the arbitration agreement was unenforceable both because it was an unconscionable contract of adhesion and because its enforcement would violate public policy. Notably, in her brief, Saltzman concedes that the arbitration provision is **not** an unconscionable contract of adhesion, positing that "[w]hile the [trial court's] outcome was correct, [its] reasoning was slightly amiss." Saltzman's Br. at 9. Instead, Saltzman argues that "the arbitration

clause is not unenforceable because it is a contract of adhesion, but because of its unacceptable minimization of [her] right to a potential recovery." *Id.*[4]

## A. The Arbitration Clause and the Vindication of Statutory Rights

Under the Whistleblower Law, a plaintiff may be awarded the costs of litigation, including reasonable counsel fees and witness fees. 43 P.S. § 1425.[5] The Agreement, however, provides that "the fees and costs of the arbitrator and related expenses of arbitration shall be borne equally by the parties" and that "[e]ach party shall be responsible for its own attorney's fees and costs." Agmt. ¶ 16. Saltzman claims that the remedies available under the Whistleblower Law are significantly greater than those available under the Agreement and her litigation costs would be higher in arbitration. Thus, Saltzman contends that the arbitration clause is unenforceable because it precludes her from effectively vindicating her statutory rights.

---

[4] Because Saltzman does not argue that the arbitration provision is an unenforceable contract of adhesion, we need not address that issue.

[5] Section 1425 of the Whistleblower Law provides:

> A court, in rendering a judgment in an action brought under this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies. A court shall also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the complainant prevails in the civil action.

43 P.S. § 1425.

We disagree.

First, in its brief, Jefferson admits that Saltzman could recover the same remedies "whether she litigates her claims in arbitration or in court." Jefferson's Br. at 40. Jefferson further states that "any arbitrator would have the authority to . . . award the same remedies Saltzman could be awarded in a court should she prevail." *Id.* at 45.

Second, the Agreement provides that the arbitration proceeding would be governed by the American Health Lawyers Association Dispute Resolution Service Rules of Procedure for Arbitration ("AHLA Rules"). Agmt. ¶ 16.[6] Section 10 of the AHLA Rules applies to any "employment case," which is defined as "a dispute between an organization and an individual arising out of . . . the course of, or the termination of an employment relationship." AHLA Rule 10.2.[7] In an employment case subject to a mandatory arbitration clause, the AHLA Rules provide:

_____

[6] The Agreement states that the arbitration shall be governed by the AHLA Rules "then in effect." Agmt. ¶ 16. Here, the record contains a portion of the 1991 AHLA Rules, which were revised in May 2012. **See** Jefferson's Reply Mem. of Law, 7/20/15, Ex. 2. However, we take judicial notice of the fact that the AHLA Rules were subsequently revised, effective April 7, 2014, which pre-dated the parties' August 1, 2014 Agreement. **See** AHLA Rules (eff. April 7, 2014), available at https://www.healthlawyers.org/dr/SiteAssets/Lists/drsaccordion/EditForm/Rules%20Effective%20April%207.pdf. Therefore, because the 2014 AHLA Rules would apply to the instant arbitration, we cite the 2014 version of the Rules above.

*(Footnote Continued Next Page)*

> **The arbitrator must disregard any contract provision that purports to limit the employee's statutory rights or remedies**, including, but not limited to, any increase in the burden of proof required to prove liability or any cap lower than the applicable statutory cap on the recovery of damages, attorneys' fees, or costs.

AHLA Rule 10.5(d) (emphasis added). Moreover, with regard to fees, the AHLA Rules state that "[r]egardless of any contract that states otherwise, **the employer will pay the arbitrator's fees and expenses**" unless the employee volunteers to pay or the arbitrator concludes that the employee's claim is frivolous. AHLA Rule 10.5(a) (emphasis added). Thus, the record does not support Saltzman's claim that arbitration would limit her potential remedies under the Whistleblower Law.

In any event, the "effective vindication of statutory rights exception" to arbitration does not apply to Saltzman's state statutory claims. The cases on which Saltzman relies to support her argument involved federal, not state, statutory rights. ***See, e.g., Paladino v. Avnet Computer Techs.***, 134 F.3d 1054 (11th Cir. 1998) (involving Title VII claim); ***Underwood v. Chef Fransico/Heinz***, 200 F.Supp.2d 475 (E.D. Pa. 2002) (involving Title VII claim). Moreover, as the United States District Court for the Eastern

_(Footnote Continued)_ _____

[7] In its brief, Jefferson relies on the prior version of the AHLA Rules, which provided: "In a claim arising out of or related to employment or termination of employment [like Saltzman's alleged claims here], the arbitrator may grant any applicable statutory remedies and damages available." Jefferson's Br. at 40 (alteration in original) (quoting former AHLA Rule 6.06).

District of Pennsylvania explained in **Torres v. CleanNet U.S.A., Inc.**, 90 F.Supp.3d 369, 377-78 (E.D. Pa. 2015):

> Recent Supreme Court cases confirm that there is absolutely no rule that prevents arbitration when a person cannot effectively vindicate his or her state statutory rights. . . . Most recently, in [**American Express Co. v. Italian Colors Restaurant**, 133 S.Ct. 2304, 2310–11 (2013)], the [United States] Supreme Court explained that the effective vindication rule only applies to prevent arbitration of a federal statute in the limited circumstance where an arbitration agreement prohibits the assertion of a federal statutory right and "would perhaps [apply to] filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." 133 S.Ct. at 2310-11. . . .
>
> . . .
>
> Because the effective vindication rule does not apply to state statutes, Torres cannot prevail on his argument that the arbitration agreement is unenforceable because it prevents him from effectively vindicating his state statutory rights.

Similarly, in **Provenzano**, this Court rejected the plaintiff's claim that an arbitration agreement was unenforceable because it contravened his rights under Pennsylvania's Wage Payment and Collection Law ("WPCL"). 121 A.3d at 1103. We explained: "Absent some type of state-law defense that would invalidate the arbitration clause itself, we see no basis under Pennsylvania law to disfavor an agreement to arbitrate a WPCL claim." **Id.**

Nor is there support for Saltzman's argument that arbitration would contravene a statutory right to pursue her claims in a court of law. Section 1424(a) of the Whistleblower Law provides that a plaintiff "**may** bring a civil action in a court of competent jurisdiction." 43 P.S. § 1424(a) (emphasis

added). In ***Provenzano***, our Court interpreted identical language in the WPCL and concluded that such language is "permissive, not mandatory" and, thus, the WPCL does not give a plaintiff an "absolute right to sue in the judicial forum" or to "exclusive judicial oversight." 121 A.3d 1101; ***see Tripp v. Renaissance Advantage Charter Sch.***, 2003 WL 22519433, at *11 (E.D. Pa. 2003) (holding that use of the term "court" in section 1424(a) of Whistleblower Law does not indicate legislature's intent to exclude such claims from arbitration); ***see also Bensinger v. Univ. of Pittsburgh Med. Ctr.***, 98 A.3d 672, 677-78 (Pa.Super. 2014) (recognizing that there is no statutory right to jury trial under Whistleblower Law).

### B. The Arbitration Clause and Public Policy

Next, Jefferson contends that the trial court abused its discretion in concluding that enforcement of the arbitration provision in this case would violate public policy. Saltzman argues, and the trial court agreed, that "arbitration of [her] Whistleblower claim would run afoul of the Commonwealth's strong public policy in favor of allowing its citizens to make safe, informed decisions regarding medical service providers by granting access to information regarding medical practitioners." Saltzman's Br. at 13. In concluding that arbitration of Saltzman's claims would violate public policy, the trial court focused exclusively on the "nature" of Saltzman's allegations:

> [Saltzman] levels very serious allegations of misconduct against [Jefferson]. By their very nature, these proceedings should not be shielded from public view by an

- 13 -

> arbitration clause. The citizens of the Commonwealth of Pennsylvania, and the public at large, have an interest in the public resolution of this litigation. Compelling arbitration in this matter would be fundamentally incompatible with the remedial and deterrent functions of the [Whistleblower Law].

1925(a) Op. at 5. While we agree that Saltzman's allegations against Jefferson, if proven, could be of important public interest, we do not agree that Saltzman's claims are exempt from arbitration for that reason.

A court may refuse to enforce a contract that violates public policy. *Fields v. Thompson Printing Co.*, 363 F.3d 259, 268 (3d Cir. 2004). "Such a public policy, however, must be well-defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983)).

The Whistleblower Law is "chiefly a remedial measure intended to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." *O'Rourke v. Commonwealth of Pennsylvania, Dep't of Corrections*, 778 A.2d 1194, 1202 (Pa. 2001) (internal quotation omitted).[8] The Law "is

_____

[8] Section 1422 of the Whistleblower Law defines an "employer" as "[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." 43 P.S. § 1422. A "public body" includes any body that is created by the Commonwealth or "funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body." *Id.* This Court has held that an entity that receives Medicaid funding is a "public body" for purposes of the Whistleblower Law. *Denton v. Silver Stream*

*(Footnote Continued Next Page)*

- 14 -

specifically designed to protect employees from adverse employment actions when making a good faith report regarding an instance of wrongdoing or waste." *Pa. Game Comm'n v. State Civ. Serv. Comm'n (Toth)*, 747 A.2d 887, 892 n.10 (Pa. 2000).

In her brief, Saltzman appears to advocate a blanket prohibition on the arbitration of whistleblower claims. We can find no support for such a prohibition in the law. It is well settled that contracting parties must "proceed to arbitration on issues subject to a valid arbitration agreement, even if a state law would otherwise exclude it from arbitration." *Taylor*, 147 A.3d at 509; *see also Kindred Nursing*, 137 S.Ct. at 1426 ("The FAA . . . preempts any state rule discriminating on its face against arbitration – for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.'"). "The only exception" to a state's obligation to enforce an arbitration agreement is where an applicable contract defense, such as fraud, duress, or unconscionability, is proven. *Taylor*, 147 A.2d at 509. Here, however, Saltzman does not seek to invalidate the arbitration provision based on fraud, duress, or unconscionability. *See supra* at 7-8.

*(Footnote Continued)* ─────────────

*Nursing and Rehab. Ctr.*, 739 A.2d 571, 576 (Pa.Super. 1999) ("The plain meaning of the language of [section 1422] makes it clear that it was intended to apply to all agencies that receive public monies under the administration of the Commonwealth."). In her complaint, Saltzman averred that Jefferson receives funds from the Commonwealth through its participation in Pennsylvania's Medicaid program and is, therefore, an "employer" within the meaning of the Whistleblower Law. Compl. ¶¶ 6-8.

In its opinion, the trial court emphasized the public's need to be privy to the disposition of Saltzman's whistleblower claims because Jefferson provides medical services to the public. 1925(a) Op. at 5. However, litigation in a public forum is not required in order to preserve the remedial and deterrent functions of the Whistleblower Law. If Saltzman were to prevail on her claims – whether in arbitration or in a judicial forum – Jefferson would suffer significant adverse legal consequences. In rejecting a plaintiff's contention that her Whistleblower Law claim was not subject to the arbitration provision in her employment contract, the federal court in **Tripp** explained:

> [C]oncern for statutorily protected classes provides no reason to color the lens through which the arbitration clause is read. **By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum**. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

2003 WL 22519433, at *11 (quoting **Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.**, 473 U.S. 614, 628 (1985)) (emphasis added).

Here, by refusing to enforce the arbitration agreement based solely on the "nature" of Saltzman's claims, the trial court failed to apply the liberal policy favoring arbitration under both federal and Pennsylvania law. **See Provenzano**, 121 A.3d at 1101-03 (rejecting plaintiff's argument that WPCL outweighed policy favoring arbitration where she failed to prove legislative intent to exclude such claims from arbitration). Our Supreme Court has

stated: "Where the parties by contract contemplate the settlement of disputes by arbitration, every reasonable intendment will be made in favor of the agreement[.] **The public policy of this State is to give effect to arbitration agreements**." *Capecci v. Joseph Capecci, Inc.*, 139 A.2d 563, 565 (Pa. 1958) (emphasis added; internal citation omitted). We agree with Jefferson that the strong public policy favoring arbitration agreements outweighs the general public's purported interest in hearing the disposition of Saltzman's claims.[9]

For these reasons, we conclude that the trial court abused its discretion in concluding that the parties' arbitration agreement is invalid and unenforceable.

## II. Whether Saltzman's Claims Are Within the Scope of the Arbitration Provision

Having determined that the parties entered into a valid, enforceable arbitration agreement, we turn next to the question whether Saltzman's claims fall within the scope of the arbitration provision. The trial court did not reach this question because it concluded that the parties' arbitration agreement was unenforceable. However, we may consider this issue because whether a dispute falls within the scope of an arbitration clause is a question of law for which our scope of review is plenary. *See supra* at 6.

_____

[9] We further note that nothing in the parties' Agreement precludes Saltzman from reporting Jefferson's alleged misconduct to state regulatory authorities or even the press.

To determine whether a plaintiff's claims fall within the scope of an arbitration clause, we must consider "the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001); *see Callan*, 858 A.2d at 1233 (stating that "a claim's substance, not its styling, controls whether the complaining party must proceed to arbitration"). This Court has explained:

> A "broad" arbitration clause in a contract is one that is unrestricted, contains language that encompasses all disputes which relate to contractual obligations, and generally includes "all claims arising from the contract regardless of whether the claim sounds in tort or contract." *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1276 (Pa.Super.2004). *See also Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3rd Cir.2006) (stating, "the presumption [in favor of arbitrability] is particularly applicable where the [arbitration] clause is . . . broad"). Thus, **where the arbitration provision is a broad one, and "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."**

*Provenzano*, 121 A.3d at 1096 (quoting *E.M. Diagnostic Sys., Inc. v. Local 169*, 812 F.2d 91, 95 (3d Cir. 1987)) (emphasis added; alterations in original).

Here, the Agreement states that the arbitration provision applies to "any controversy or claim between the parties hereto arising under or related to this Agreement or any breach thereof." Agmt. ¶ 16. Jefferson asserts that this broad language encompasses **all** claims relating to or

arising from the parties' contractual relationship, not just claims arising from an alleged breach of the Agreement. We agree.

In **Tripp**, the United States District Court for the Eastern District of Pennsylvania considered whether the plaintiff's Whistleblower Law claims fell within the scope of an arbitration clause in her employment contract, which provided that "[a]ll disputes arising out of or concerning this Agreement" were subject to binding arbitration. 2003 WL 22519433, at *3. The court concluded that the Whistleblower Law claims were subject to arbitration because they necessarily "concern[ed the plaintiff's] employment" and there was "no evidence that the Pennsylvania legislature intended such claims to be resolved exclusively in the judicial forum." **Id.** at *11; **see also Provenzano**, 121 A.3d at 1102-03 (holding that plaintiff's WPCL claim was within scope of arbitration provision, where "claim arose out of the alleged breach of the employment contract, [was] wholly dependent on the contract, and [the plaintiff could not] make out his WPCL claim without reference to the employment contract").

Moreover, the United States Court of Appeals for the Third Circuit has held that "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction." **Battaglia v. McKendry**, 233 F.3d 720, 727 (3d Cir. 2000); **cf. Smay**, 864 A.2d at 1274 ("[W]here an arbitration clause is unrestricted, the parties to the contract could be compelled to arbitrate any claim that implicates a contractual obligation."). Therefore, because the arbitration provision in this

- 19 -

case states that it applies to "any" dispute "arising under or related to" the Agreement, we conclude that it encompasses all disputes relating to the parties' contractual relationship.

We further reject Saltzman's contention that because her statutory claims sound in tort, not contract, they are not subject to arbitration. Saltzman relies on *Hazleton Area School District v. Bosak*, 671 A.2d 277, 283 (Pa.Cmwlth. 1996), in which the Commonwealth Court affirmed the denial of a motion to compel arbitration on the ground that the arbitration clauses at issue did not encompass tort claims. The arbitration clauses in *Hazleton* provided that "[c]laims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration" and "any dispute concerning the subject matter of this AGREEMENT . . . between the parties hereto, . . . shall be settled in accordance with the American Arbitration Association's Rules and Regulations." *Id.* at 279 (quoting record).

Relying on the Pennsylvania Supreme Court's decision in *Muhlenberg Township School District Authority v. Pennsylvania Fortunato Construction Co.*, 333 A.2d 184 (Pa. 1975), the Commonwealth Court concluded that the arbitration clauses did not manifest the parties' intent to arbitrate a tort claim for negligent performance of the contract. *Id.* at 282. The Court reasoned that if the parties had intended to arbitrate tort claims,

they would have included specific language demonstrating that intent. **_Id._** at 282-83.

This Court, however, has expressly disapproved of the Commonwealth Court's reasoning in **_Hazleton_**. In **_Smay_**, the defendant sought to compel arbitration of the plaintiffs' contract indemnification claim, but we also addressed, in dicta, whether the underlying personal injury claim was subject to arbitration. This Court stated:

> We believe that the **_Hazleton_** Court misconstrued our Supreme Court's holding in **_Muhlenberg Township_**. The arbitration clauses at issue in **_Muhlenberg Township_** referenced tortious conduct as follows:
>
>> Should either party to this Contract suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damages. 2. Claims under this clause shall be . . . [] adjusted by agreement or arbitration.
>
> The Supreme Court concluded that the phrase "suffer damage in any manner" in the arbitration clause was all-inclusive and extended to the Township's claims against the contractor for faulty materials and workmanship.
>
> Relying on **_Muhlenberg Township_**, the **_Hazleton_** Court concluded that since the arbitration clause implicated therein did not expressly and specifically include an action in tort for negligence, the appellant's claim for negligent performance fell outside the scope of the agreement. However, contrary to the **_Hazleton_** Court's reading of **_Muhlenberg Township_**, the Supreme Court did not address the scope of the arbitration agreement in relation to a tort claim. In reality, the relevant issue before the Supreme Court was whether the agreement extended to claims for faulty work or faulty materials. Thus, despite our sister court's characterization, **_Muhlenberg Township_** does not stand for the proposition that an agreement to

arbitrate must specifically reference tortious conduct in order for the agreement to apply to disputes arising under the contract which sound in tort. We are loathe to cement the Commonwealth Court's reasoning into our jurisprudence.

As discussed *supra*, the instant arbitration clause is written to encompass "Any controversy or Claim arising out of or related to the Contract[,]" and **by its own terms the clause must be read broadly to include all claims arising from the contract regardless of whether the claim sounds in tort or contract**.

*Smay*, 864 A.2d at 1275-76 (emphasis added; internal citation omitted; some alterations in original). Therefore, we concluded that the underlying negligence claim would be subject to arbitration. *Id.* at 1276.

Although our analysis of the tort claim in *Smay* was dicta, *Smay*'s reasoning is consistent with prior Superior Court precedent. This Court has consistently compelled the arbitration of tort claims arising from a contractual relationship where the language of the arbitration clause is broad and unlimited. *See, e.g., Callan*, 858 A.2d at 1234 (holding that tort claim arising from real estate sales contract was subject to arbitration); *Warwick Twp. Water and Sewer Auth. v. Boucher & James, Inc.*, 851 A.2d 953, 958 (Pa.Super. 2004) ("[G]iven the broad scope of the arbitration language which provides that arbitration is to be the preferred means to resolve all claims arising out of or relating to the contract documents, it was improper for the trial court to rule that the arbitration provision does not apply to the negligence claim."); *Pittsburgh Logistics Sys., Inc. v. Prof'l Transp. and Logistics, Inc.*, 803 A.2d 776, 779 (Pa.Super. 2002) (holding that tort

action for misappropriation of trade secrets, breach of common law fiduciary duties, and interference with contractual relationship was within the scope of parties' broad arbitration agreement).

Here, the arbitration provision, which applies to "any controversy or claim between the parties hereto arising under or related to this Agreement," Agmt. ¶ 16, is broadly worded, and there is no evidence demonstrating the parties' intent to exclude tort claims arising from or related to the Agreement.  *See Provenzano*, 121 A.3d at 1096 (absent express provision excluding particular dispute from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail") (quoting *E.M. Diagnostic*, 812 F.2d at 95); *Callan*, 858 A.2d at 1233 ("[E]very reasonable effort should be made to favor [an arbitration] agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.").

Accordingly, we conclude that the trial court abused its discretion in overruling Jefferson's preliminary objections seeking to compel arbitration.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/30/2017