J-A11028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M2J2S, LLC D/B/A SERVICEMASTER RESTORATION SERVICES, MICKEY RAPP AND JESSIE BOCK | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| UNITED TELEPHONE COMPANY OF PENNSYLVANIA, LLC D/B/A CENTURYLINK | : | No. 1185 MDA 2018 |
| | : | |
| | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Dated June 21, 2018
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2018-04421

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY OLSON, J.: **FILED JULY 09, 2019**

Appellant, United Telephone Company of Pennsylvania, LLC, d/b/a CenturyLink (CenturyLink) appeals from the order entered on June 21, 2018 denying CenturyLink's preliminary objections to a complaint filed by M2J2S, LLC, d/b/a ServiceMaster Restoration Services (ServiceMaster).[1] Upon review, we reverse and remand for further proceedings consistent with this memorandum.

This case arises from a contract between CenturyLink and ServiceMaster for the remediation of extensive water damage and mold contamination of

---

[1] Mickey Rapp and Jessie Bock originally asserted claims against CenturyLink. Those claims were dismissed by the trial court. Rapp and Bock are not parties to the current appeal.

property leased by CenturyLink. ServiceMaster and CenturyLink entered into a contract on June 11, 2015. The parties also signed a "statement of authorization for mold," which included the following arbitration clause:

> Any dispute between Owner [(CenturyLink)] and ServiceMaster (including the interpretation of this Agreement), except for non-payment of invoices for ServiceMaster's work, shall be submitted to binding arbitration. … The arbitration shall be binding on all parties and judgment may be entered in any court having jurisdiction.

Statement of Authorization for Mold, 6/11/2015, ¶ 7 (original emphasis omitted).

At the time of the agreement, CenturyLink indicated there was no asbestos in the building. According to ServiceMaster, once it began work, CenturyLink interfered in numerous ways, the most serious of which was a site visit by a CenturyLink contractor who, without wearing protective equipment, removed materials from the property for asbestos testing. After this incident, ServiceMaster and CenturyLink quarreled over the presence of asbestos on the property.

On July 23, 2015, CenturyLink sent ServiceMaster a notice of claims, "which claimed … breaches of contract, claims of contractual undertakings, and violation of asbestos removal and disposal regulations." Complaint, ¶ 127. ServiceMaster responded to these allegations; CenturyLink did not reply except to inform ServiceMaster that it received its response.

On August 12, 2015, ServiceMaster filed a writ of summons in the trial court. On September 10, 2015, according to ServiceMaster, CenturyLink

notified ServiceMaster that there was a "serious asbestos issue" for which "CenturyLink was claiming approximately $164,000.00 in offset claims in relation to the work." *Id.* at ¶ 145. The next day, counsel for ServiceMaster responded to those claims and sent an acceptance of service form with a copy of the writ of summons, asking CenturyLink's counsel to accept service on behalf of CenturyLink as previously promised. According to ServiceMaster, on September 16, 2015, CenturyLink's counsel sent another "false and fraudulent demand for immediate payment by ServiceMaster to CenturyLink of $164,000.00." *Id.* at 151.

On October 19, 2015, CenturyLink filed preliminary objections to ServiceMaster's complaint, which included a preliminary objection based on lack of subject matter jurisdiction. CenturyLink asserted that the arbitration clause in the contract required the parties to arbitrate this matter. According to CenturyLink,

> [t]he dispute at issue … [was] ServiceMaster's breach of contract, including advising CenturyLink that there was no asbestos present in the area where the mold abatement work was to be completed and performing unlicensed demolition of asbestos-containing materials, which subsequently required CenturyLink to spend significant sums investigating and completing clean-up and incur costs for lost use of lease space and obtaining alternate facilities.

Preliminary Objections, 10/19/2015, ¶ 16. CenturyLink asserted that "because the dispute at issue is ServiceMaster's breach of contract, this matter must be arbitrated and the [trial court is] without subject matter jurisdiction." *Id.* at ¶ 18.

ServiceMaster did not file a written response to the preliminary objections, but instead requested argument. After argument, on August 15, 2016, the trial court overruled CenturyLink's preliminary objection based on lack of subject matter jurisdiction, concluding that the arbitration clause excepted claims involving non-payment of ServiceMaster's invoices and, because ServiceMaster alleged non-payment of invoices, ServiceMaster properly filed suit in the trial court. On September 15, 2016, CenturyLink timely appealed to this Court.

In an unpublished memorandum filed on September 5, 2017, a prior panel of this Court reversed the trial court order overruling CenturyLink's preliminary objections and remanded the case for further proceedings. Our prior panel recognized that the parties did not dispute the validity of the arbitration clause and, thus, the proper inquiry was whether the alleged dispute fell within the scope of that clause.[2] After citing general contract law principles, the prior panel noted:

> In its opinion, the trial court concluded that the term "except for nonpayment of invoices for ServiceMaster's work" ("except clause") "clear[ly] state[d] that arbitration was expressly limited to disputes related to quality of contracted services and excluded contract balance claims." In re: Opinion Pursuant to Pa.R.A.P. 1925(a), 11/14/16, at 3. The court therefore found that "the claims of the [c]omplaint are outside the arbitration clause" and overruled CenturyLink's preliminary objection. *Id.* The trial court's

---

[2] As we shall explain below, whether to enforce an arbitration agreement clause involves a two-part inquiry. First, the trial court must determine if a valid arbitration agreement exists. Second, if there is a valid agreement, there must be a determination as to whether the dispute involved is within the scope of the arbitration provision. *See* **infra** at 9.

- 4 -

ruling is premised on an implicit conclusion that the except clause is unambiguous. We disagree.

The except clause is reasonably susceptible to two constructions. The first construction, which would render the arbitration clause narrow and favor ServiceMaster, would exclude from binding arbitration any issue that involves, either directly or indirectly, the non-payment of invoices. The second construction of the except clause, which would render the arbitration clause broad and favor CenturyLink, would require binding arbitration for all issues except those that involve only the non-payment of invoices. The parties have not offered, nor have we found, any case law that interprets the language contained in this particular clause.

Based on the language of the except clause, and the lack of case law interpreting similar language, we conclude that the except clause is subject to more than one reasonable interpretation. Because the provision is ambiguous, the trial court erred in construing the clause as a matter of law. Accordingly, we remand this case to the trial court for further proceedings. Those proceedings may include an evidentiary hearing to allow the parties to present parol evidence concerning the meaning of the except clause. Whether or not the parties avail themselves of that opportunity, the role of the trial court is to determine, as a matter of fact, the meaning of the clause. *See Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) ("[A]mbiguous writings are interpreted by the finder of fact[.]").

*United Telephone Company of Pennsylvania, LLC v. M2J25, LLC*, 2017 WL 385793, at *4 (Pa. Super. 2017) (unpublished memorandum).

Following our remand and an evidentiary hearing, the trial court ultimately concluded:

[…]The central inquiry on remand remains as to whether the contract's arbitration clause requires this disagreement to be submitted to binding arbitration. The arbitration clause provides that "[a]ny dispute between [CenturyLink] and ServiceMaster (including the interpretation of this Agreement), **except** for non-payment of services for ServiceMaster's work, shall be submitted to binding arbitration." (emphasis added).

- 5 -

The [e]videntiary [h]earing yielded little substantive material for consideration. Although [CenturyLink] was granted the opportunity to present witnesses and parol evidence to establish the meaning of the except clause, [CenturyLink] did not provide documentation of other evidence that described quality of work issues that would fall within the scope of the binding arbitration paragraph.

The [c]omplaint, as crafted, is essentially a contract dispute for work that was performed but not paid. The binding arbitration paragraph expressly limits arbitration to disputes relating to quality of contracted services and excludes contract balance claims. As the record stands, only the well-pled allegations of the [c]omplaint, [CenturyLink's] [p]reliminary [o]bjection, and evidence adduced by the parties at the [e]videntiary [h]earing were considered, specifically no anticipated evidence was considered, and it was determined that the claims for nonpayment for services rendered are outside the arbitration clause. Accordingly, [CenturyLink's] [p]reliminary [o]bjection that the arbitration clause mandated the parties to submit their dispute to binding arbitration was again overruled [by order entered on June 21, 2018].

Trial Court Opinion, 9/18/2018, at 4-5 (record citation omitted; emphasis in original). This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

1. Whether the trial court abused its discretion by failing to sustain [Appellant's] preliminary objection that the arbitration clause of the parties' [c]ontract mandated that the parties submit a dispute to binding arbitration?

2. Whether the trial court failed to comply with [this] Court's September 5, 2017 [o]rder to "determine, as a matter of fact, the meaning of the [except] clause[?]"

_____

[3] CenturyLink filed a notice of appeal on July 16, 2018. On July 19, 2018, the trial court directed CenturyLink to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). CenturyLink complied timely. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 18, 2018.

3. Whether the trial court erred by finding "that at this point in the proceedings the claim, as distilled from the [c]omplaint, is for payment on a contract that is specifically excluded from the contractual binding arbitration as pled."

Appellant's Brief at 3-4 (suggested answers omitted).

On appeal, CenturyLink presents three interrelated issues that we will address together. CenturyLink initially points to our prior panel's decision that the arbitration provision at issue was susceptible to two constructions and that we remanded this matter for the trial court to determine, as a matter of fact, the ambiguous meaning of the "except clause." CenturyLink argues that the trial court failed to do so. *Id.* at 6-7 and 11. It further claims that ServiceMaster argued on remand that "CenturyLink had a burden at the evidentiary hearing to present evidence that 'asbestos services' were within the [s]cope of the [c]ontract and that CenturyLink claims [were] meritorious" which essentially engrafted an additional evidentiary burden on CenturyLink. CenturyLink's Reply Brief at 3-4. As such, CenturyLink contends that "[t]o determine the factual meaning of the except clause on remand, there [was] no requirement that CenturyLink prove its claims fall within the [s]cope of the [c]ontract or that its claims are meritorious." *Id.* at 5. "In characterizing CenturyLink's claims as claims for 'asbestos services' and therefore outside the [s]cope, ServiceMaster ignores its contractual obligations to perform demolition in a workmanlike manner, which was the basis for CenturyLink's claims." *Id.* "Despite [this] Court's directive to determine as a matter of fact

the meaning of the except clause, the trial court again made a determination based as a matter of law, focusing only on pleadings and claims as it had during the previous appeal." CenturyLink's Brief at 17. Accordingly, CenturyLink argues that, "the trial court cannot escape this Court's mandate by reevaluating whether CenturyLink made plausible claims when this Court already determined that CenturyLink did." CenturyLink's Reply Brief at 7. Finally, CenturyLink claims it presented clear and unambiguous evidence at the evidentiary hearing "demonstrat[ing] that the arbitration agreement is broad and requires arbitration for all issues except those involving only non-payment of services." **Id.** at 7-8. CenturyLink asserts that, at an evidentiary hearing on remand, ServiceMaster President and CEO, "Mickey Rapp, as the drafter and presenter of the [c]ontract, testified that workmanship falls within the scope of the [c]ontract and the instant dispute belongs in arbitration." **Id.** at 3; **see also** CenturyLink's Brief at 20. CenturyLink maintains that "ServiceMaster presented no documents or testimony to support its position that the except clause is broad and excludes any dispute even tangentially involving non-payment." CenturyLink's Brief at 20.

> As the prior panel of this Court determined:
>
> "Our review of an order overruling preliminary objections seeking to compel arbitration 'is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.' " **Saltzman v. Thomas Jefferson Univ. Hosps., Inc.**, ––– A.3d ––––, 2017 WL 2823523, at *3 (Pa. Super. filed June

30, 2017) (*quoting* **Callan v. Oxford Land Dev., Inc**., 858 A.2d 1229, 1233 (Pa. Super. 2004)). In making this determination, we consider the following principles:

> (1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.

*Id.* (*quoting* **Callan**, 858 A.2d at 1233). "Whether a dispute is within the scope of an arbitration agreement is a question of law for which our scope of review is plenary." *Id.* (citation omitted).

Courts apply the following test to determine whether to compel arbitration:

> Where a party to a civil action seeks to compel arbitration of that action, a two-part test is employed to determine if arbitration is required. First, the trial court must determine if a valid agreement to arbitrate exists between the parties. Second, if the trial court determines that such an agreement does exist, it must then determine if the dispute involved is within the scope of the arbitration provision. The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally.

**Pittsburgh Logistics Sys., Inc. v. Professional Transp. & Logistics**, **Inc.**, 803 A.2d 776, 779 (Pa. Super. 2002) (internal citations and quotation omitted).

**United Telephone Company of Pennsylvania, LLC v. M2J2S**, 2017 WL 3865793, at *3.

As we have previously noted, neither party herein disputes the validity of the arbitration clause. On remand, because the provision at issue was susceptible to more than one interpretation, we directed the trial court to determine, as a matter of fact, the meaning of the clause. The trial court,

however, only evaluated the allegations of the complaint and subsequent pleadings in concluding that ServiceMaster's claims were outside the arbitration clause. Trial Court Opinion, 9/18/2018, at 5. As such, we agree with CenturyLink that the trial court failed to make a factual determination as directed by this Court's prior panel and, again, made a legal determination despite our finding that the contract was ambiguous. As such, we vacate the trial court's order sustaining ServiceMaster's preliminary objections and remand for additional proceedings.

This Court has previously explained the interpretation of arbitration agreements as follows:

> Where a contract dispute arises between parties to a contract containing an unlimited arbitration clause, the parties must resolve their dispute through arbitration. Unless the parties impose some limitation on the arbitrator's authority, the arbitrator may decide all matters necessary to dispose of any disputed claims subject to arbitration and the court may not impose any restrictions *sua sponte*. Accordingly, "all" contract disputes does mean "all" contract disputes unless otherwise agreed by the parties.
>
> An agreement to arbitrate disputes arising from a contract encompasses tort claims where the facts which support a tort action also support a breach of contract action. A claim's substance, not its styling, controls whether the complaining party must proceed to arbitration or may file in the court of common pleas.
>
>              *          *          *
>
> When there is no question the parties did agree to arbitrate, whether [] questions of performance were properly and/or timely brought before the arbitrator **is for the arbitrator to decide**.

*Callan*, 858 A.2d at 1233–1234 (emphasis added).

- 10 -

We have previously determined:

> In a proceeding to stay or compel arbitration, the question of whether the parties agreed to arbitrate, commonly referred to as 'substantive arbitrability,' is generally one for the courts and not for the arbitrators. On the other hand, resolution of procedural questions, including whether the invocation of arbitration was proper or timely is left to the arbitrator. Such questions may be referred to as 'procedural arbitrability.'
>
> [...T]here has been a long line of cases that hold that **if it appears that a dispute relates to a contract's subject matter and the parties agreed to arbitrate, all issues of interpretation and procedure, including requirements preliminary to the presentation of any claims, are for the arbitrators to resolve**.

*Theodore C. Wills Co., Inc. v. School Dist. of Boyertown Area*, 837 A.2d 1186, 1189 (Pa. Super. 2003) (emphasis added).

Here, there is no dispute that the plain language of the arbitration agreement at issue states:

> **Any dispute** between Owner [(CenturyLink)] and ServiceMaster (**including the interpretation of this Agreement**), except for non-payment of invoices for ServiceMaster's work, **shall be submitted to binding arbitration**. … The arbitration shall be binding on all parties and judgment may be entered in any court having jurisdiction.

Statement of Authorization for Mold, 6/11/2015, ¶ 7 (original emphasis omitted; emphasis supplied). Based upon the foregoing, it is clear that the parties agreed that all disputes, including the interpretation of the scope of the arbitration agreement, were to be submitted to binding arbitration. Only an arbitrator can determine whether CenturyLink's demands qualified merely as non-payment of invoices in a narrow sense or related more broadly to the

- 11 -

quality of work performed by ServiceMaster. As such, we remand for the appointment of an arbitrator to decide the scope of the arbitration provision at issue.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/09/2019