J-A28042-23

2024 PA Super 18

| | | |
|---|---|---|
| JAMES M. MCCROSSIN AND ROBYN K. MCCROSSIN, H/W  AND SALVATORE P. RAFFA AND HOLLY E. RAFFA, H/W | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| COMCAST SPECTACOR, LLC, FPS RINK, LP, AND ABC COMPANIES | : : : : : : : | No. 887 EDA 2023 |
| APPEAL OF: COMCAST SPECTACOR, LLC AND FPS RINK, LP | : : | |

Appeal from the Order Entered March 7, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  220400997

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

OPINION BY COLINS, J.:                    **FILED FEBRUARY 6, 2024**

Appellants, Comcast Spectacor, LLC (Comcast Spectacor) and FPS Rink, L.P. (FPS) (collectively, Defendants), appeal an order of the Court of Common Pleas of Philadelphia County (trial court) overruling their preliminary objections seeking arbitration in a personal injury action brought by two employees of Philadelphia Flyers, L.P. (the Flyers) and the employees' wives. For the reasons set forth below, we affirm in part and reverse in part.

On April 12, 2022, James M. McCrossin (McCrossin) and Salvatore P. Raffa (Raffa) (Husband Plaintiffs) and their wives (Wife Plaintiffs) (collectively,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Plaintiffs) brought the instant action against Comcast Spectacor and FPS alleging that Husband Plaintiffs were employed by the Flyers and sustained personal injuries due to exposure to chemicals emitted by Zamboni machines at the Flyers Training Center where they worked. First Amended Complaint ¶¶19, 21, 29-46, 57-59, 62-65.[1] Comcast Spectacor is a wholly-owned subsidiary of a wholly-owned subsidiary of Comcast Corporation (Comcast). Listino Aff. ¶4. Comcast Spectacor owns 99% of both FPS and the Flyers as the limited partner of those entities, and the one-percent general partners of both FPS and the Flyers are wholly-owned subsidiaries of Comcast Spectacor. *Id.* ¶¶5-10; *see also* First Amended Complaint ¶¶14-15 (alleging that Comcast Spectacor owned and controlled FPS).

Plaintiffs allege in their complaint that Defendants owned, possessed, operated, managed, maintained, or controlled the Flyers Training Center and that they are liable for Husband Plaintiffs' injuries on theories of negligence and strict liability for ultrahazardous activity under Restatement (Second) of Torts §§ 519 and 520. First Amended Complaint ¶¶18, 26, 68-82. Wife

_____

[1] Plaintiffs originally named a number of other entities as defendants but discontinued their claims against all of those other entities, except for the fictitious defendants "ABC Companies," by stipulation. The complaint defines "ABC Companies" as entities whose names are unknown to Plaintiffs that are "partnerships, proprietorships, and/or corporations who owned and/or controlled [the Flyers Training Center], and/or engaged in emitting, creating, dispensing, using, handling, transporting, storing, transferring, dispensing, distributing, and/or permitting exposure to, benzene, or other carcinogens, at [the Flyers Training Center]." First Amended Complaint ¶7. No claim against the fictitious ABC Companies defendants is at issue in this appeal.

Plaintiffs assert claims against Defendants for loss of consortium. *Id.* ¶¶83-89. Plaintiffs do not name the Flyers as a defendant. McCrossin, however alleges that Defendants, in addition to exposing him to chemicals, caused him emotional distress by causing the Flyers to alter his employment conditions in retaliation for the filing of this lawsuit. First Amended Complaint ¶¶66-67.

Husband Plaintiffs both signed employment agreements with the Flyers. First Amended Complaint ¶19; Defendants' Preliminary Objections ¶38. The employment agreements define "Club" as the Flyers and "Employee" as McCrossin and Raffa in their respective agreements. McCrossin Employment Agreement at 1; Raffa Employment Agreement at 1. Paragraph 12 of the employment agreements provides in relevant part:

> Arbitration/Waiver of Right to Trial By Judge Or Jury/Class Action Waiver.
> A. In consideration of the mutual obligations set forth in this Agreement, the parties agree that they will comply with and be bound by the terms of the Comcast Solutions Early Dispute Resolution Program (the "Comcast Solutions Program") as provided in the Comcast Solutions Program Guide, with respect to any and all Covered Claims that may arise between them, as such term is defined under the Comcast Solutions Program. AS PART OF THIS AGREEMENT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE CLUB AND EMPLOYEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER THEY OR THEIR HEIRS, EXECUTORS, ADMINISTRATORS, PERSONAL REPRESENTATIVES, SUCCESSORS OR ASSIGNS MAY HAVE TO A TRIAL BY JURY OR IN A COURT OF LAW OR EQUITY IN ANY LITIGATION OF COVERED CLAIMS BASED ON, ARISING FROM OR RELATING TO THIS AGREEMENT AND/OR EMPLOYEE'S EMPLOYMENT WITH THE CLUB. … The parties' mutual obligations and agreements under this paragraph and the Comcast Solutions Program shall survive the termination or expiration of this

> Agreement as well as Employee's employment with the C[l]ub
> for any reason.

McCrossin Employment Agreement ¶12 (emphasis in original); Raffa Employment Agreement ¶12 (emphasis in original).

The Comcast Solutions Program requires binding arbitration of all "Covered Claims" unless they are resolved through optional review and mediation procedures. Comcast Solutions Program Guide at 2, 5-10. The arbitration is to be conducted through the American Arbitration Association (AAA) or Judicial Arbitration and Mediation Services (JAMS)[2] and is "subject to the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1-14." Comcast Solutions Program Guide at 7-9. The Comcast Solutions Program Guide defines "Covered Claims" as follows:

> Claims that are covered under Comcast Solutions ("Claims" or "Covered Claims") include **any claims (other than the excluded claims identified below) raised between a Participating Employee and the Company, or the Company's subsidiaries, affiliates, predecessors, and successor corporations and business entities** ("Company Entities"), and their officers, directors, employees, and agents, **that involve an alleged violation of law (including alleged violations of** any federal, state or local statute, regulation or **common law), where such alleged violation relates to or arises from the employment relationship**. **Covered Claims include claims related to or arising from any aspect of the employment relationship, including, without limitation,** recruiting and hiring, compensation, **terms and conditions of employment**, and the termination of the employment relationship.

_____

[2] Whether the claim is arbitrated through AAA or JAMS is determined by the state where the claimant was employed and in this case the arbitration would be through JAMS. Comcast Solutions Program Guide at 7-8 & n.1.

*Id.* at 2 (emphasis added).  The "Company" is defined as Comcast, Comcast Cable, and their non-NBCUniversal subsidiaries and affiliates that adopt the Comcast Solutions Program.  *Id.* at 1.  "Participating employee" is defined as including employees of subsidiaries and affiliates of Comcast that adopted the Comcast Solutions Program who were hired under an employment contract that made participation in the Comcast Solutions Program a condition of their employment.  *Id.* at 1-2.

The Comcast Solutions Program Guide lists as examples of "Covered Claims" discrimination, wage, and whistleblower claims and "[b]reach of contract claims and tort claims, including tortious interference with contract, fraud, fraud in the inducement, negligence and/or any kind of unlawful tortious conduct prohibited under applicable federal, state or local law."  Comcast Solutions Program Guide at 2-3.  The claims that it excludes from "Covered Claims" are unemployment and workers' compensation claims, claims under several federal non-personal injury statutes, and "[a]ny claim that is expressly precluded from arbitration by a federal statute or federal regulation." *Id.* at 3.  The Comcast Solutions Program Guide further provides:

> No Covered Claims between the Participating Employee and the Company may be brought, pursued or litigated, by either the Company or the Participating Employee, in a federal, state or local court of law or equity. By participating in this Program, the Company and Participating Employees specifically agree that, to the maximum extent allowed by governing law, they: (a) waive the right to bring any Covered Claim(s) in a court of law or equity; (b) waive the right to have Covered Claims heard by a court, judge or jury; and (c) waive the right to bring or pursue Covered Claims

as a representative or member of a class, collective, or representative action ….

\*          \*          \*

As part of this Program, both the Company and Participating Employees, specifically and to the fullest extent permitted by governing law, waive their right to have Covered Claims heard in court.

*Id.* at 3, 9. The Comcast Solutions Program Guide also provides that the arbitration is to be conducted "under the employment claim rules/procedures propounded by" the entity (AAA or JAMS) that is conducting the arbitration. *Id.* at 8.

Defendants filed preliminary objections seeking dismissal of Plaintiffs' action in its entirety on the ground that Plaintiffs' claims must be resolved under the Comcast Solutions Program. Plaintiffs opposed Defendants' preliminary objections on the grounds that Defendants were not parties to Husband Plaintiffs' employment agreements and on the ground that their claims were not within the scope of the arbitration agreement. On March 7, 2023, the trial court overruled Defendants' preliminary objections.[3] Trial Court Order, 3/7/23. The trial court held that Defendants were not entitled to arbitrate Plaintiffs' claims on the grounds that Defendants were not parties

---

[3] In their preliminary objections, Defendants also moved to strike paragraphs 66 and 67 of Plaintiffs' complaint. The trial court's overruling of that preliminary objection is not at issue in this appeal, although, as discussed below, the allegations in those paragraphs affect whether McCrossin's claims are within the scope of the arbitration agreement.

to the employment agreements. Trial Court Opinion at 5-7. Defendants filed a timely notice of appeal from this order.

Because it goes to our jurisdiction to decide this appeal, we must first address the issue of whether the trial court's order is an appealable order. An order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right under 42 Pa.C.S. § 7320(a)(1) and Pa.R.A.P. 311(a)(8). *In re Estate of Atkinson*, 231 A.3d 891, 897 (Pa. Super. 2020); *Provenzano v. Ohio Valley General Hospital*, 121 A.3d 1085, 1089 n.1 (Pa. Super. 2015). Alternative dispute resolution agreements that merely include arbitration as only one of a number of possible methods of resolving disputes are not arbitration agreements, and denial of enforcement of such dispute resolution agreements is not appealable as of right. *Armstrong World Industries, Inc. v. Travelers Indemnity Co.*, 115 A.3d 342, 343-47 (Pa. Super. 2015). Where the parties' agreement requires arbitration, however, the denial of enforcement is appealable as of right even though the parties' agreement includes some pre-arbitration settlement procedures. *Waters v. Express Container Services of Pittsburgh, LLC*, 284 A.3d 1217, 1220, 1221 n.1 (Pa. Super. 2022) (denial of arbitration was appealable as of right even though parties' agreement required pre-arbitration good faith negotiations); *Fineman, Krekstein & Harris, P.C. v. Perr*, 278 A.3d 385, 387-89 (Pa. Super. 2022) (denial of arbitration was appealable as of right even though parties' agreement required

pre-arbitration mediation); ***TTSP Corp. v. Rose Corp.***, 217 A.3d 1269, 1272-73, 1278-79 (Pa. Super. 2019) (denial of arbitration was appealable as of right even though parties' agreement required attempt to resolve dispute amicably before arbitration).

The dispute resolution provisions at issue here are plainly arbitration agreements. Paragraph 12 of Husband Plaintiffs' employment agreements requires that the parties resolve disputes under the Comcast Solutions Program. McCrossin Employment Agreement ¶12; Raffa Employment Agreement ¶12. The Comcast Solutions Program requires binding arbitration to resolve all disputes that are not settled by agreement of the parties. Comcast Solutions Program Guide at 5-10. Although it permits settlement of claims by two other means prior to resort to arbitration, the Comcast Solutions Program does not even require the parties to go through those steps prior to arbitration. ***Id.*** at 5-7. Instead, it specifically provides:

> The first two steps of the Comcast Solutions process, however, are not a mandatory prerequisite before moving to arbitration. Either party may request to skip Step 1 [review] and/or Step 2 [mediation] of the process and proceed directly to the next step.

***Id.*** at 5. The trial court's order overruling Defendants' preliminary objections that Plaintiffs' claims must be resolved under the Comcast Solutions Program is therefore appealable as of right, and this appeal is properly before us.[4]

---

[4] The fact that Defendants sought dismissal of the complaint in their preliminary objections does not defeat jurisdiction. An order overruling a
*(Footnote Continued Next Page)*

Defendants raise the following single issue in this appeal:

Whether the trial court erred and abused its discretion in overruling preliminary objections to compel arbitration, where Plaintiffs' claims are subject to valid agreements to arbitrate contained within employment agreements and other documents referenced and incorporated therein, and the claims asserted are all covered claims that fall within the scope of the arbitration agreements?

Appellants' Brief at 5. That issue presents questions of law subject to this Court's plenary review. *Estate of Atkinson*, 231 A.3d at 898 (whether a written contract includes an arbitration agreement and whether the parties' dispute is within the scope of the arbitration agreement are questions of law).

Pennsylvania and federal law both impose a strong public policy in favor of enforcing arbitration agreements. *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 532-33 (2012); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983); *Estate of Atkinson*, 231 A.3d at 898; *Saltzman v. Thomas Jefferson University Hospitals, Inc.*, 166 A.3d 465, 471 (Pa. Super. 2017). If a valid agreement to arbitrate exists and the dispute falls within the scope of that arbitration agreement, the dispute must be submitted to arbitration. *Estate of*

---

preliminary objection that a claim cannot be litigated in court because it is subject to an arbitration agreement is appealable as of right even if the defendant did not request an order compelling arbitration. *Waters*, 284 A.3d at 1221 & n.1 (court had jurisdiction even though defendant's preliminary objections sought only dismissal of plaintiff's claims). Defendants' preliminary objections asserted that Plaintiffs' claims cannot be litigated in court because they are subject to the Comcast Solutions Program arbitration agreement. Preliminary Objections to Amended Complaint ¶¶32-73.

***Atkinson***, 231 A.3d at 898; ***Saltzman***, 166 A.3d at 472; ***Provenzano***, 121 A.3d at 1094.

There is no dispute here that Husband Plaintiffs entered into valid agreements to arbitrate. Husband Plaintiffs signed employment agreements that required that certain disputes be resolved through the Comcast Solutions Program as set forth in the Comcast Solutions Program Guide, which requires binding arbitration. McCrossin Employment Agreement ¶12; Raffa Employment Agreement ¶12; Comcast Solutions Program Guide at 5-10. The Comcast Solutions Program and Comcast Solutions Program Guide are part of Husband Plaintiffs' employment agreements to the extent that Paragraph 12 of the employment agreements requires compliance with the Comcast Solutions Program with respect to a dispute. The terms of a contract include both terms in the contract document signed by the parties and terms in documents that the signed contract specifically identifies and incorporates. ***Estate of Atkinson***, 231 A.3d at 898-99 (party who agreed in contract that he signed to be bound by the terms and conditions in other document was bound by arbitration agreement in that other document that was incorporated by reference in the signed contract); ***Southwestern Energy Production, Co. v. Forest Resources, LLC***, 83 A.3d 177, 187-88 (Pa. Super. 2013) (terms in separate documents incorporated by reference in a written contract constitute terms of that contract). Plaintiffs do not contend, and the trial court did not find that the arbitration agreement set forth in the employment

agreements and the Comcast Solutions Program Guide is unconscionable or invalid.

The fact that Defendants are not parties to the contracts that Husband Plaintiffs signed does not bar them from enforcing the arbitration agreements. Generally, only parties to an arbitration agreement can be compelled to arbitrate a dispute. *Humphrey v. GlaxoSmithKline PLC*, 263 A.3d 8, 14 (Pa. Super. 2021); *Civan v. Windermere Farms, Inc.*, 180 A.3d 489, 494-95 (Pa. Super. 2018); *Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa. Super. 2012). Defendants, however, are seeking to compel arbitration, and Husband Plaintiffs, who would be compelled to arbitrate, signed the arbitration agreement.

A non-party that is not referenced in an arbitration agreement cannot compel arbitration of claims unconnected to the contract that contains the arbitration agreement. *Elwyn*, 48 A.3d at 462-64; *Gallagher v. Hearthside Realty, Inc.*, No. 3699 EDA 2018, slip op. at 5-8 (Pa. Super. Sept. 9, 2019). However, non-parties, such as affiliates or agents of a party to the contract, that have an obvious and close nexus to the contract or contracting parties can enforce an arbitration agreement. *Saltzman*, 166 A.3d at 468-69 & n.2; *Provenzano*, 121 A.3d at 1097, 1103; *Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa. Super. 2006). In addition, non-parties that the parties intend to include in the arbitration agreement can compel arbitration. *Dodds*, 909 A.2d at 351.

Here, Defendants are affiliates of the other party to the employment agreements, the Flyers. Moreover, Defendants are expressly included in the arbitration agreement. Paragraph 12 of the employment agreements specifically requires that Husband Plaintiffs arbitrate claims within its scope under the Comcast Solutions Program, and the Comcast Solutions Program applies to claims between them and Comcast "subsidiaries, affiliates, predecessors, and successor corporations and business entities." Comcast Solutions Program Guide at 2. The trial court therefore erred in holding that Defendants cannot enforce the arbitration agreements against Husband Plaintiffs.

Wife Plaintiffs, however, did not sign the employment agreements or enter into any agreement to arbitrate and are not seeking to enforce rights under the employment agreements. Their claims for loss of consortium are derivative of Husband Plaintiffs' injuries but separate from their husbands' causes of action. ***Darr Construction Co. v. Workmen's Compensation Appeal Board***, 715 A.2d 1075, 1079–1080 (Pa. 1998); ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 659 (Pa. Super. 2013). Arbitration cannot be compelled against a plaintiff that did not sign an arbitration agreement based on the fact that such a separate claim is derivative of injuries to a party who agreed to arbitration. ***Pisano***, 77 A.3d at 661-63. There is therefore no valid basis to compel Wife Plaintiffs to arbitrate their claims even if Husband Plaintiffs' claims are within the scope of the arbitration agreements

at issue here, and the trial court's order must be affirmed with respect to Wife Plaintiffs claims on that ground.[5]

Whether the trial court erred in holding that Husband Plaintiffs' claims are not subject to arbitration under the Comcast Solutions Program turns on whether the claims in the complaint are within the scope of Husband Plaintiffs' arbitration agreements. Neither the fact that the claims are personal injury claims nor the fact that arbitration would bifurcate Husband Plaintiffs' claims from Wife Plaintiffs' claims and require piecemeal litigation in two separate fora is a permissible ground for denying arbitration if Husband Plaintiffs' claims are within the scope of their arbitration agreements. *Marmet Health Care Center, Inc.*, 565 U.S. at 533-34; *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 508-10, 512 (Pa. 2016); *Waters*, 284 A.3d at 1222. Two principles govern the decision whether a claim is within the scope of an arbitration agreement: (1) arbitration agreements must be strictly construed and not extended by implication, and (2) where there is a clear agreement to arbitrate, the arbitration provision should be enforced unless it is not susceptible to an interpretation that covers the claim. *Fineman*, 278 A.3d at 389; *Saltzman*, 166 A.3d at 471; *Provenzano*, 121 A.3d at 1095.

---

[5] Although the trial court did not base its denial of arbitration on this basis, we may affirm a trial court on grounds different than those on which it based its decision. *Livingston v. Greyhound Lines Inc.*, 208 A.3d 1122, 1135 n.8 (Pa. Super. 2019); *In re Estate of Rood*, 121 A.3d 1104, 1105 n.1 (Pa. Super. 2015).

If the parties' contract contains an arbitration clause requiring arbitration of any claims arising out of or relating to their contract, a claim that arises out of the parties' contractual relationship must be arbitrated, even if it is a tort or other non-contract cause of action and is not based on any breach of the contract's terms. **Waters**, 284 A.3d at 1222-25 (personal injury claim for accident while plaintiff was performing work for defendant as an independent contractor was within scope of provision requiring arbitration of any claim that "arises out of or relates to ... operations pursuant to" the parties' contract); **Saltzman**, 166 A.3d at 469, 476-78 (whistleblower claim and tort claim for wrongful discharge were within scope of arbitration agreement in employment contract, "because the arbitration provision in this case states that it applies to 'any' dispute 'arising under or related to' the Agreement, we conclude that it encompasses all disputes relating to the parties' contractual relationship"); **Pittsburgh Logistics Systems, Inc. v. Professional Transportation and Logistics, Inc.**, 803 A.2d 776, 779-82 (Pa. Super. 2002) (claims of interference with prospective contract with a third party, breach of fiduciary duty, and misappropriation of trade secrets were within arbitration clause because they arose out of the parties' contractual relationship). "[W]here the arbitration provision is a broad one, and '[i]n the absence of any express provision excluding a particular grievance from arbitration, ... only the most forceful evidence of a purpose to exclude the

claim from arbitration can prevail.'" **Waters**, 284 A.3d at 1223 (quoting **Provenzano**).

Although the arbitration agreement here is limited to matters connected to Husband Plaintiffs' employment, its language is broad and is not limited to contractual or employment law rights. The employment agreements and the Comcast Solutions Program Guide that they incorporate state that the agreement to arbitrate applies not only to claims under the employment contract but also to claims "based on, arising from or relating to … Employee's employment" with the Flyers and to any claim that "relates to or arises from the employment relationship," and expressly encompass common law negligence and other tort claims. McCrossin Employment Agreement ¶12 (unnecessary capitalization omitted); Raffa Employment Agreement ¶12 (unnecessary capitalization omitted); Comcast Solutions Program Guide at 2-3. The Comcast Solutions Program Guide's inclusion of workers' compensation claims, which are personal injury claims, in its list of excluded claims, would be superfluous if personal injury claims were incapable of being claims related to employment or the employment relationship.

Defendants are not Husband Plaintiffs' employer. Plaintiffs, however, allege that that the injuries that Husband Plaintiffs suffered were caused by exposure to chemicals in their employment and at their place of employment. First Amended Complaint ¶¶19, 41-46, 54, 57-59. The complaint also asserts claims that the Husband Plaintiffs' workplace was unsafe and that Defendants

are liable on the ground that they created an unsafe work environment. ***Id.*** ¶¶21, 69(c), (g), (h), (l), (m). All of the claims here therefore arise out of Husband Plaintiffs' employment.

The employment agreements that Husband Plaintiffs signed, however, do not state that they agree that the Comcast Solutions Program applies to all "Covered Claims" arising out of Husband Plaintiffs' employment. Rather, the employment agreements provide that Husband Plaintiffs and the Flyers agree to comply with and be bound by the Comcast Solutions Program arbitration agreement only "with respect to any and all Covered Claims **that may arise between them**." McCrossin Employment Agreement ¶12 (emphasis added); Raffa Employment Agreement ¶12 (emphasis added). The language in the Comcast Solutions Program that includes affiliates only applies if there is an agreement to be bound by the Comcast Solutions Program with respect to the claim. The language of the employment agreements that Husband Plaintiffs agreed to be bound by the Comcast Solutions Program with respect to claims that arise between them and the Flyers requires that there be some dispute between Husband Plaintiffs and the Flyers or claim by Husband Plaintiffs based on conduct of the Flyers for the Comcast Solutions Program to apply.

Husband Plaintiffs' claims that Defendants exposed them to chemicals that injured them do not assert any claims against the Flyers and do not on the face of the complaint assert any claims that Defendants' liability is based on conduct of the Flyers. Plaintiffs' allegations in support of these claims

allege that Defendants committed the conduct on which the chemical exposure claims are based and do not allege Defendants directed actions of the Flyers that caused the chemical exposure or that the Flyers owned the Zamboni machines that emitted the chemicals. First Amended Complaint ¶¶21, 26, 29, 47-56, 59, 64-65, 69-70, 73-82. Those claims are therefore not within the scope of the provision in Husband Plaintiffs' employment agreements in which they agreed that claims between them and the Flyers arising out of their employment would be subject to arbitration under the Comcast Solutions Program. Because Raffa asserts only these claims that Defendants exposed him to chemicals that injured him, the trial court did not err in concluding that Raffa's claims were not subject to arbitration.

McCrossin, however, has asserted an additional claim against Defendants that is based on a claim of wrongful conduct by the Flyers. In paragraph 66 and 67 of the complaint, McCrossin alleges that the Flyers took adverse employment action against him, that Defendants "directed, instructed, influenced, and/or persuaded" the Flyers to take these actions in retaliation for this lawsuit, and that Defendants are liable for harm inflicted on McCrossin by the Flyers' employment actions. First Amended Complaint ¶¶66-67. Those claims, because they allege wrongful employment actions by the Flyers and seek to hold Defendants liable for those allegedly wrongful employment actions of the Flyers, necessarily involve a dispute between McCrossin and the Flyers concerning McCrossin's employment. The trial court

therefore erred in holding that none of McCrossin's claims were within the scope of his arbitration agreement.

For the foregoing reasons, we conclude that Raffa and Wife Plaintiffs are not required to arbitrate any of their claims against Defendants and that McCrossin is not required to arbitrate his chemical exposure claims, but that he is required to arbitrate the claims asserted in paragraphs 66 and 67 of the complaint under the Comcast Solutions Program. Accordingly, we affirm the trial court's order in all respects other than its denial of arbitration of McCrossin's claims in paragraphs 66 and 67 of the complaint, reverse its order insofar as it denied arbitration of McCrossin's claims in paragraphs 66 and 67 of the complaint, and remand with directions that the trial court order McCrossin to resolve the claims that he has pled in paragraphs 66 and 67 of the complaint under the Comcast Solutions Program.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/6/2024

- 18 -