J-A30025-25          2026 PA Super 41

| | | |
|---|---|---|
| DANIEL DUFFY AND LAVERNE DUFFY, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT TATUM, JASON REEVES, DOLLY, INC., UPDATER, INC., JOHN/JAN DOES 1-9, ABC CORPORATIONS 1-9 | : | No. 483 EDA 2025 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: DOLLY, INC. | : | |

Appeal from the Order Entered February 3, 2025
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 240501856

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and SULLIVAN, J.

OPINION BY PANELLA, P.J.E.: **FILED MARCH 3, 2026**

Dolly, Inc ("Dolly") appeals from the order overruling its preliminary objections alleging the parties agreed to an alternative dispute resolution disposition. Dolly argues the trial court erred in finding Dolly's website did not provide reasonably obvious notice of its terms of service to Daniel Duffy ("Duffy") prior to Duffy purchasing Dolly's services and, as such, Duffy never agreed to waive his constitutional right to a jury trial. After careful review, we affirm.

The trial court set forth the relevant factual and procedural history:

On November 30, 2022, [Duffy] used a web browser on his iPad or laptop to access Dolly's website (www.Dolly.com). On Dolly's website, [Duffy] clicked "Book a Dolly," selected, among other things, the desired service, number of movers, item the movers

would move, vehicle the movers would use to move the item, and the date, time, and location of the move.

Dolly's website then required [Duffy] to provide, among other things, his first and last name, a mobile phone number, and to checkmark a box labeled "By checking this box I accept the Dolly Terms of Service" before [Duffy] was permitted to register and purchase services. The phrase "Dolly Terms of Service" was underlined. The website provided [Duffy] with the ability to click on the underlined phrase "Dolly Terms of Service" as it was a hyperlink to Dolly's full Terms of Service Agreement. If [Duffy] clicked on the hyperlink, Dolly's Terms of Service Agreement would appear in a new web browser window. On Page 3, Dolly's Terms of Service Agreement contained the following provision:

**Governing Law; Arbitration**

PLEASE READ THE FOLLOWING PARAGRAPHS CAREFULLY BECAUSE THEY REQUIRE YOU TO ARBITRATE DISPUTES WITH DOLLY AND LIMIT THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM DOLLY.

These Terms shall be governed and construed in accordance with the laws of the State of Washington and the United States of America, without resort to any conflict of law provisions.

In the event of any controversy or claim arising out of or relating in any way to these Terms or the Dolly platform, you and Dolly agree to consult and negotiate with each other and, recognizing our mutual interests, try to reach a solution satisfactory to both parties. If we do not reach settlement within a period of 60 days, then either of us may, by notice to the other[,] demand mediation under the mediation rules of the American Arbitration Association in Seattle, Washington. We both give up our right to litigate our disputes and may not proceed to arbitration without first trying mediation, but you and Dolly are NOT required to arbitrate any dispute in which either party seeks equitable and other relief from the alleged unlawful use of copyrights, trademarks, trade names, logos, trade secrets or patents. Whether the dispute

is heard in arbitration or in court, you and Dolly will not commence against the other a class action, class arbitration or other representative action or proceeding.

If settlement is not reached within 60 days after service of a written demand for mediation, any unresolved controversy or claim will be resolved by arbitration in accordance with the rules of the American Arbitration Association before a single arbitrator in Seattle, Washington. The language of all proceedings and filings will be English. The arbitrator will render a written opinion including findings of fact and law and the award and/or determination of the arbitrator will be binding on the parties, and their respective administrators and assigns, and will not be subject to appeal. Judgment may be entered upon the award of the arbitrator in any court of competent jurisdiction. The expenses of the arbitration will be shared equally by the parties unless the arbitration determines that the expenses will be otherwise assessed and the prevailing party may be awarded its attorneys' fees and expenses by the arbitrator. It is the intent of the parties that, barring extraordinary circumstances, arbitration proceedings will be concluded within 90 days from the date the arbitrator is appointed. The arbitrator may extend this time limit only if failure to do so would unduly prejudice the rights of the parties. Failure to adhere to this time limit will not constitute a basis for challenging the award. Consistent with the expedited nature of arbitration, pre-hearing information exchange will be limited to the reasonable production of relevant, non-privileged documents, carried out expeditiously.

For any disputes that are not handled by arbitration, you agree that any action at law or in equity arising out of or relating to these Terms shall be filed only in the state and federal courts located in Seattle, Washington and you hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of such courts over any suit, action or proceeding arising out of these Terms or the use of the Dolly Platform.

If [Duffy] had looked at Dolly's Terms of Service Agreement, there would have been no statement on the first page of the Terms of Service stating in bold capitalized letters that the user is waiving the right to [a] jury trial. No other part of the website stated that a user is waiving the right to [a] jury trial. If [Duffy] had not check marked the box, the website would not have allowed [Duffy] to proceed to registration and to purchase services but instead would return him to a window in which the phrase "By checking this box I accept the Dolly Terms of Service" would be in red font. There was no other way to register and purchase services other than check marking the box. If [Duffy] had check marked the box, the website would permit [Duffy] to register and purchase services. The website did not require [Duffy] to click the underlined "Dolly Terms of Service" hyperlink in order to register and purchase services. The website did not require [Duffy] to scroll to the bottom of the Terms of Service Agreement in order to register and purchase services.

On November 30, 2022, [Duffy] purchased from Dolly through its website moving services which, during such moving services, an accident occurred, and [Duffy] was injured.

On May 15, 2024, Plaintiffs filed a request for the issuance of a Writ of Summons, which was issued on that same date, and, on September 24, 2024, filed a Complaint against Defendants in the Philadelphia County Court of Common Pleas for negligence and loss of consortium. On October 11, 2024, Dolly filed Preliminary Objections to Plaintiffs' Complaint arguing that Plaintiffs had entered into an agreement for alternative dispute resolution with Dolly for such claims. On November 4, 2024, Plaintiffs filed a response to Dolly's Preliminary Objections arguing that there exists no valid alternative dispute resolution agreement between the parties. On November 25, 2024, the trial court issued a Rule permitting each party to conduct discovery on the issue of the agreement for alternative dispute resolution and then to submit supplement[al] briefs. On January 31, 2025, the trial court overruled Dolly's Preliminary Objections. On February 19, 2025, Dolly filed a timely appeal of the [] order.[1]

---

[1] While the trial court dated the order January 31, 2025, the order was not docketed until February 3, 2025.

- 4 -

Trial Court Opinion, 5/1/25, at 1-4 (record citations and footnote omitted).

The trial court ordered Dolly to file a Rule 1925(b) statement and they complied. *See* Pa.R.A.P. 1925(b). The trial court authored its Rule 1925(a) opinion on May 1, 2025. *See* Pa.R.A.P. 1925(a).

Dolly raises one question for our review:

> Did the trial court err in denying Dolly, Inc.'s preliminary objection in the nature of an application to compel alternative dispute resolution because 42 [Pa.C.S.A.] § 7304 requires the [c]ourt to order the parties to proceed with alternative dispute resolution where, as here, (1) a valid agreement to engage in alternative dispute resolution exists and was agreed to by the parties; and (2) the dispute falls within the scope of the alternative dispute resolution provision of the Agreement[?]

Appellant's Brief, at 5.[2]

Before we address the merits of the case, we must first address the issue of whether the trial court's order is an appealable order. *See McCrossin v. Comcast Spectacor, Inc.*, 311 A.3d 1115, 1121 (Pa. Super. 2024). Traditionally,

> [a]n order overruling preliminary objections that seek to compel arbitration is an interlocutory order appealable as of right under 42 Pa.C.S.[A.] § 7320(a)(1) and Pa.R.A.P. 311(a)(8).

_____

[2] The trial court relied upon *Chilutti v. Uber Technologies, Inc.*, 300 A.3d 430 (Pa. Super. 2023) (*en banc*), which was recently reversed by the Pennsylvania Supreme Court on jurisdictional grounds during the pendency of this appeal. *See Chilutti v. Uber Technologies, Inc.*, ---A.3d---, 58 EAP 2025 (Pa. filed Jan. 21, 2026). The Supreme Court did not address the merits of the appeal in *Chilutti*. We borrow substantially from this Court's well-founded *en banc* decision in *Chilutti* and find our state constitution provides greater protection of the right to a jury trial, consistent with our *en banc* decision in *Chilutti*.

[Conversely, a]lternative dispute resolution agreements that merely include arbitration as only one of a number of possible methods of resolving disputes are not arbitration agreements, and denial of enforcement of such dispute resolution agreements is not appealable as of right. Where the parties' agreement requires arbitration, however, the denial of enforcement is appealable as of right even though the parties' agreement includes some pre-arbitration settlement procedures.

*Id.* (citations omitted).

Here, the agreement includes pre-arbitration settlement negotiations and mediation before requiring arbitration if settlement does not occur. We therefore find we have jurisdiction to address this matter under 42 Pa.C.S.A. § 7320(a)(1) and Pa.R.A.P. 311(a)(8).

Turning to the central issue, we note that this case involves an overarching question of whether a person should be deprived of their constitutional right to a jury trial when they ostensibly enter into an arbitration agreement through hyperlinked terms of service on a website that the person never clicked on, viewed, or read. In evaluating this question, we stress our Commonwealth's guarantee that its citizens have a constitutional right to a jury trial that remains inviolate. **See** Pa.Const. art 1, § 6 ("Trial by jury shall be as heretofore, and the right thereof remain inviolate."). "Inviolate" is defined as "[f]ree from violation; not broken, infringed, or impaired." Black's Law Dictionary, "INVIOLATE" (11th ed. 2019).

For over a hundred and fifty years, our Pennsylvania Supreme Court has protected this constitutional right:

The bill of rights, which is forever excluded from legislative invasion, declares that the trial by jury shall remain as heretofore, and the right thereof be inviolate; that all courts shall be open, and that every man shall have redress by the due course of law, and that no man can be deprived of his right, except by the judgment of his peers or the law of the land.

*Brown v. Hummel*, 6 Pa. 86, 90 (1847).

"Whether an agreement to arbitrate disputes exists is a question of law."

*Neuhard v. Travelers Ins. Co.*, 831 A.2d 602, 604 (Pa. Super. 2003) (citation omitted). "When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law." *Id.* (citation omitted). Pennsylvania provides a two-part test in determining whether arbitration should be compelled: "The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement." *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004) (citations omitted).

We note the relationship between arbitration agreements and the constitutional right to a jury trial:

Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the Federal Arbitration Act ("FAA"). The fundamental purpose of the [FAA] is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars. Its passage was a congressional declaration of a liberal federal policy favoring arbitration agreements.

This policy, however, was not intended to render arbitration agreements more enforceable than other contracts, and the FAA had not been designed to preempt all state law related to arbitration. Rather, when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should

apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration.

***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651, 660-61 (Pa. Super. 2013) (citations, brackets, footnotes, and quotation marks omitted).

Arbitration agreements have evolved over the years, and the effect of this evolution has substantially reduced the constitutional right to jury trials in the civil arena. As our Pennsylvania Supreme Court has observed:

> One of the striking consequences of the shift away from the civil justice system and toward private adjudication is that corporations are routinely stripping individuals of their constitutional right to a jury trial. See U.S. Const. amend. VII (preserving the right to trial by jury); Pa. Const. art. 1, § 6 (same). While one's right to a jury trial may be waived, it is not at all apparent that signatories to arbitration agreements are aware that they waive their right to a jury trial upon the execution of an arbitration agreement.

***Taylor v. Extendicare Health Facilities, Inc.***, 147 A.3d 490, 508 (Pa. 2016) (footnote omitted).

The law can be slow to keep up with the realities of everyday life. This includes the profuse use of arbitration agreements in contracts on a near daily basis and the consequences of these agreements on a person's constitutional right to a jury trial. The copious use of contracts with restrictive arbitration agreements causes concern, particularly in the context of internet contracts like the one at issue here, where the parties are frequently of unequal bargaining power and one party may be unaware of the significant rights they are waiving simply by using a website to make a purchase or retain services.

In recognition of this reality, Pennsylvania courts have taken a small step towards righting the wrongs of arbitration agreements with respect to wrongful death actions involving negligent nursing center facilities. ***See i.e., Pisano***, 77 A.3d at 661-62 ("compelling arbitration upon individuals who did not waive their right to a jury trial would infringe upon wrongful death claimants' constitutional rights"). In recognizing this step, we note there is still a need for greater scrutiny regarding a person's waiver of their constitutional right to a jury trial when it comes to these arbitration agreements. This need is imperative when there is no genuine effort to inform a purchaser of the terms of the contract before they click on a link or box that purports to generate their agreement to the contract, as is the case here.

In a similar vein, we note that confessions of judgment are bound by strict scrutiny. A confession of judgment is similar to an arbitration agreement because it takes place in the commercial transaction setting and waives one's right to a jury trial.

The compliance requirements for a confession have been described as follows:

> Historically, Pennsylvania law has recognized and permitted entry of confessed judgments pursuant to the authority of a warrant of attorney contained in a written agreement. A warrant of attorney is a contractual agreement between the parties and the parties are free to determine the manner in which the warrant may be exercised. **Entry of a valid judgment by confession must be made in rigid adherence to the provisions of the warrant of attorney; otherwise, such judgment will be stricken**. A warrant to confess judgment **must be explicit** and **will be strictly construed**, with any ambiguities resolved against the

- 9 -

party in whose favor the warrant is given. A warrant of attorney to confess judgment **must be self-sustaining** and to be self-sustaining the warrant **must be in writing and signed by the person to be bound by it.** The **requisite signature must bear a direct relation** to the warrant of attorney and **may not be implied.**

*Neducsin v. Caplan*, 121 A.3d 498, 505 (Pa. Super. 2015) (citations, brackets, and quotation marks omitted; emphases added).

Following this rationale, "[t]here should be no doubt that the borrower signed the warrant and that he was conscious of the fact he was conferring a warrant upon the lender or lessor to confess judgment in the event of a breach." *Wilmington Savings Fund Society, FSB v. Patel*, 336 A.3d 984, 2903 EDA 2023, *6 (Pa. Super. filed March 18, 2025) (citing *Ferrick v. Bianchini*, 69 A.3d 642, 651 (Pa. Super. 2013)).[3] As an example, this Court, in *Graystone Bank v Grove Estates, LP.*, 58 A.3d 1277 (Pa. Super. 2012), found a warrant of attorney valid because it "appeared conspicuously in all caps on the very bottom of the penultimate page of the agreement and immediately *preceded* where the executor … signed at the top of the following, final page." *Graystone Bank*, 58 A.3d at 1283 (italics in original).

Consequently, our precedent in Pennsylvania holds that courts will only uphold a confession of judgment when it is clear that the party that agreed to it was aware that they waived their constitutional right to a jury trial. We find

_____

[3] Pursuant to Pa.R.A.P. 126(b), we may rely on non-precedential decisions of this Court filed after May 1, 2019 for their persuasive value.

the same must be applied to arbitration provisions hidden in online purchase agreements. These types of restrictive arbitration provisions should only be enforced if it is clear that the parties agreeing to it were aware that they were resultantly waiving their constitutional right to a jury trial. Where the provision is buried within hyperlinks or in tiny print, there is a high probability the person was not aware of the arbitration provision, and it is therefore unenforceable.

However, historically courts have reviewed arbitration agreements with far less stringent standards. Frequently, arbitration agreements waiving a person's right to a jury trial in an online contract are inconspicuous and contained in a hyperlink separate from the binding agreement action, for example, by clicking an "I agree to the terms and conditions" or simply by clicking "continue" to use the webpage. These contracts often do not require a person's signature, and even if they do, the signature is not in direct relation to the waiver of the right to a jury trial. Furthermore, many times these contracts do not even require acknowledgment that the person has reviewed the agreement before making it a binding contract.

In fact, a much more rigorous process is observed when a criminal defendant waives their right to a jury trial. That waiver must be "approv[ed] by a judge of the court in which the case is pending[.]" *Commonwealth v. Smith*, 181 A.3d 1168, 1175 (Pa. Super. 2018) (citation omitted). Notably, Rule 620 provides that a waiver is valid only after "[t]he judge [] ascertain[s] from the defendant whether this is a knowing and intelligent waiver, and such

colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness." Pa.R.Crim.P. 620.

We find that it is imperative that not only in criminal matters but also in the civil arena that a person be fully informed of their constitutional right to a jury trial and the effect of waiving that right. Certainly, an on-the-record colloquy is not required in civil contract matters as in criminal, but it is essential that the waiver be clearly described and evident that the person waiving that right understand the right they are giving up by agreeing to the contract.

Mindful of this, we stress that, in today's day and age, online users are pressured on a daily basis to form contracts with companies through their computer or smart phone. These contracts cover a wide spectrum from long-term binding contracts such as mortgage loans to consumer sales, to registration for food delivery or ride share services. These "[d]ifferent Internet products lead to different expectations and applications of legal doctrine." Paul J. Morrow, Esq., *Cyberlaw: The Unconscionability/Unenforceability of Contracts (Shrink-wrap, Clickwrap, and Browse-wrap) on the Internet: A Multidistrict Analysis Showing the Need for Oversight*, 11 U.P.H. J. Tech. L. Pol'y 7 (Spring 2011). Certain corporations use these online contracts with

veiled terms to bind unsophisticated, uninformed, and unsuspecting customers to arbitration agreements from the convenience of their couch.

Basically, the elements of a valid contract in Pennsylvania are an "offer, acceptance, consideration or mutual meeting of the minds." *Gasbarre Products, Inc. v. Smith*, 270 A.3d 1209, 1218 (Pa. Super. 2022) (citation and internal quotation marks omitted). "[T]here must be a meeting of the minds; the very essence of an agreement is that the parties mutually assent to the same thing*." Accu-Weather, Inc. v. Thomas Broadcasting Co.*, 625 A.2d 75, 78 (Pa. Super. 1993) (internal quotation marks, ellipsis, and citation omitted). "Whether particular conduct expresses an offer and acceptance must be determined on the basis of what a reasonable person in the position of the parties would be led to understand by such conduct under all of the surrounding circumstances." *Temple University Hosp., Inc. v. Healthcare Management Alternatives, Inc*, 764 A.2d 587, 593 (Pa. Super. 2000) (citation and internal quotation marks omitted).

The question presented here must therefore focus on whether Duffy took any action that manifested his assent to be bound by the terms and conditions on Dolly's website. We will consider what a reasonable person in his position would understand by using Dolly's website.

Dolly relies upon federal case law, which we remind Dolly is not binding upon this Court. We note that federal courts frequently rely upon whether an online contract is a "clickwrap" or "browsewrap" agreement in determining if

the online contract is binding upon a party. However, there are at least four different types of online consumer contracts (*browsewrap*, *clickwrap*, *scrollwrap*, and *sign-in wrap*) as outlined by the Supreme Court of Maine:

> "Browsewrap" exists where the online host dictates that assent is given merely by using the site. "Clickwrap" refers to the assent process by which a user must click "I agree," but not necessarily view the contract to which [he or] she is assenting. "Scrollwrap" requires users to physically scroll through an internet agreement and click on a separate "I agree" button in order to assent to the terms and conditions of the host website. "Sign-in wrap" couples assent to the terms of a website with signing up for the use of the site's services.

> Of these four online contract types, only a scrollwrap agreement requires a user actually to view (albeit not necessarily read) the terms of the online contract before manifesting assent. Courts have consistently found scrollwrap agreements enforceable because they present the consumer with a realistic opportunity to review the terms of the contract **and** they require a physical manifestation of assent.

*Sarchi v. Uber Technologies, Inc.*, 268 A.3d 258, 266 (Me. 2022) (formatting altered; brackets, quotation marks, ellipsis, and citations omitted; emphasis in original).

The agreement here is a combination of *sign-in wrap* and *clickwrap* as Dolly's website did not require Duffy to scroll through the terms by clicking agree. However, Duffy could not proceed with the sign-up process without clicking a box that stated "By checking this box I accept the Dolly Terms of Service" and thereby binding himself to the waiver of jury trial in the event of a dispute. We must determine if this type of agreement passes constitutional muster under the Pennsylvania Constitution.

As we explained above, the Pennsylvania Constitution provides "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Pa.Const. art 1, § 6. Our Supreme Court has previously held "[t]he right to a jury trial in a civil action is a fundamental aspect of our system of law." *Bruckshaw v. Frankford Hosp. of City of Philadelphia*, 58 A.3d 102, 109 (Pa. 2012) (citation omitted). The Court has further stated "we have interpreted the inviolability of the right to mean freedom from substantial impairment[.]" *Commonwealth v. Noel*, 104 A.3d 1156, 1168 (Pa. 2014) (internal quotation marks and citation omitted).

We continue to hold that the constitutional right to a jury trial should be afforded the greatest protection under the courts of this Commonwealth. We therefore find a strict burden of proof is necessary to demonstrate a person's unambiguous manifestation of assent to arbitration. This requires: (1) explicitly stating on the registration website and application screens that a consumer is waiving their right to a jury trial when the person agrees to the seller's terms of service and the registration cannot be completed until the person is fully informed of that waiver; and (2) when the agreements are available for viewing after a user has clicked on a hyperlink, the waiver should not be hidden in the middle of the document but should appear prominently in bold, capitalized text.

It is important to note that the average internet user would find the term arbitration ambiguous. Without a definition of its meaning, the average

internet user could think that arbitration is simply another step in the litigation process that does not require waiving their constitutional right to a jury trial. "Both parties [to a contract] need correct information and willing acquiescence." Paul J. Morrow, Esq., *Cyberlaw: The Unconscionability/Unenforceability of Contracts (Shrink-wrap, Clickwrap, and Browse-wrap) on the Internet: A Multidistrict Analysis Showing the Need for Oversight*, 11 U.P.H. J. Tech. L. Pol'y 7 (Spring 2011). This is the reason arbitration must be defined within the arbitration agreement and why the waiver of one's right to a jury trial must be prominently displayed.

This standard has not been met here. Duffy never clicked on the hyperlink providing the terms of service. Dolly's website and application screen does not explicitly state that the consumer is waiving their right to a jury trial when they agree to the terms of service. Duffy was able to complete his registration process without being fully informed of the waiver of his right to a jury trial. The hyperlink that opens the terms of service hides the arbitration agreement within the middle of the document and does not place it in prominently in the document. Further, the arbitration provision never defines arbitration and does not state explicitly that a user is waiving his right to trial by jury. Therefore, it is clear Duffy was never informed in an explicit and upfront manner that he was waiving his constitutional right to seek damages through a jury trial.

If this case involved a confession of judgment, this Court would find that the circumstances here mandate an opening or striking of the judgment because of the discreet use of the provision in question. We would hold a criminal defendant did not knowingly and intelligently waive his right to a jury trial on these facts as well. We cannot find any reason why a similar analysis should not apply in a case such as this where the constitutional right to a jury trial is simply clicked away without any protection that our law has so frequently applied in other circumstances.

We therefore find the trial court did not err in overruling Dolly's preliminary objections. Duffy never saw the terms of service and did not unambiguously assent to arbitration. Dolly's website did not provide reasonably obvious notice of its terms of service and, consequently, there was no meeting of the minds. As such, the order of the trial court is affirmed.

Order affirmed.

President Judge Lazarus joins the opinion.

Judge Sullivan concurs in the result.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/3/2026